## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ARTY MARCEL**                                        **CIVIL ACTION**

**VERSUS**                                             **NO. 20-3278**

**DARREL VANNOY, WARDEN**                              **SECTION: "H"(3)**


## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Arty Marcel, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola Louisiana. On August 19, 2014, Marcel was charged in the Parish of Terrebonne with simple burglary of an inhabited dwelling.[1] On April 17, 2015, the bill was amended to charge Marcel with simple burglary of a shed belonging to Todd Robichaux in violation of La. Rev. Stat. § 14:62.[2] Marcel was tried before a jury on April 20 through 22, 2015, and was found guilty as charged.[3] The state filed a multiple bill of information.[4] On July 15, 2015, the trial court found

---

[1] State Rec. Vol. 1 of 9, Bill of Information, 8/19/14.
[2] State Rec. Vol. 1 of 9, Amended Bill of Information, 4/17/15.
[3] State Rec. Vol. 1 of 9, Verdict, 4/22/15; State Rec. Vol. 3 of 9, Minutes, 4/20/15; Minutes, 4/21/15; Minutes, 4/22/15; Trial Transcript, 4/20/15; Trial Transcript, 4/21/15; State Rec. Vol. 4 of 9, Trial Transcript (con't), 4/21/15; Trial Transcript, 4/22/15.
[4] State Rec. Vol. 3 of 9, Minutes, 5/20/15; Minutes, 7/15/15.

Marcel a fourth felony habitual offender and sentenced Marcel to life imprisonment to be served without the benefit of probation, parole or suspension of sentence.[5]  On August 10, 2015, the trial court denied Marcel's motion for reconsideration of sentence.[6]

Marcel filed a counseled direct appeal to the Louisiana First Circuit.[7]  Marcel filed a pro se supplemental brief.[8]  The court affirmed Marcel's conviction, habitual offender adjudication, and sentence on June 3, 2016.[9]  On May 26, 2017, the Louisiana Supreme Court denied Marcel's related writ application without stated reasons.[10]  Marcel did not file a writ application with the United States Supreme Court.

On July 31, 2017, Marcel filed an application for post-conviction relief and supporting memorandum with the state district court raising the following claims: (1) he was denied the right to testify; (2) prosecutorial misconduct during closing argument; (3) the state exercised an excess number of peremptory challenges; (4) the state exercised a peremptory challenge in a discriminatory manner; (5) he was denied the right to a transcript and complete appellate review; and (6) he was denied effective assistance of counsel.[11]  Marcel requested a copy of the record so that he could further develop his claims and a motion for leave to supplement his application, which the state trial court denied on September 22, 2017.[12]

On December 28, 2017, the Louisiana First Circuit granted Marcel's related writ application and instructed the trial court to provide petitioner with a copy of the trial transcript and

---

[5] State. Rec. Vol. 1 of 9, Reasons for Sentence Pursuant to La. R.S. §15:529.1, 8/12/15; State Rec. Vol. 3 of 9, Minutes, 7/15/15; Sentencing Minutes, 8/11/15; State Rec. Vol. 4 of 9, Habitual Offender Hearing Transcript, 7/15/15; Sentencing Transcript, 8/11/15.
[6] State Rec. Vol. 1 of 9, Order, 8/10/15; Pro Se Motion for Reconsideration of Sentence, 8/7/15; State Rec. Vol. 3 of 9, Minutes, 9/23/15; State Rec. Vol. 4 of 9, Transcript, 9/23/15.
[7] State Rec. Vol. 1 of 9, Appeal Brief, 2015-KA-1805, 2/9/16.
[8] State Rec. Vol. 1 of 9, Pro Se Supplemental Brief, 2015 KA 1805, 3/24/16 (postmarked 3/21/16).
[9] State v. Marcel, 2015 KA 1805, 2016 WL 3126440 (La. App. 1st Cir. Jun. 3, 2016); State Rec. Vol. 1 of 9.
[10] State v. Marcel, 221 So. 3d 855 (La. 2017); State Rec. Vol. 1 of 9.
[11] State Rec. Vol. 2 of 9, Uniform Application for Post-Conviction Relief, 8/3/17 (dated 7/31/17).
[12] State Rec. Vol. 2 of 9, Motion for Production of Documents under Particularized Need, 7/31/17; Motion for Leave to Supplement Post-Conviction Application, 9/17/17; Order, 9/22/17; Order, 9/22/17.

any other documents to which he was entitled and reconsider his motion to supplement his application.[13]

On May 29, 2018, Marcel filed a supplemental brief in which he sought dismissal of his claim that the state was allowed thirteen peremptory challenges as well as his claim that he was denied a complete transcript.[14] He raised an additional claim of insufficiency of the evidence.[15] On July 16, 2018, Marcel filed another supplemental brief claiming that his trial counsel failed to advise him of a plea offer.[16]

On July 23, 2018, the trial court granted Marcel leave to supplement his application.[17] The trial court granted an evidentiary hearing as to claims one, two, four, and six (as to trial counsel only).[18] It ordered that Marcel be furnished with a copy of the trial transcript.[19] The trial court dismissed claim three pursuant to Marcel's request and dismissed claim five alleging denial of his right to appellate review, finding that the claim should have been raised in writs to the Louisiana Supreme Court.[20] On September 27, 2018, Marcel filed yet another supplemental brief adding a claim that the state improperly amended the bill of information.[21]

The trial court held an evidentiary hearing on October 24, 2018.[22] Marcel's trial counsel, Kerry Byrne, testified, as did Marcel. On November 26, 2018, the trial court found nothing to support Marcel's claim that he was denied the right to testify.[23] The trial court found nothing

---

[13] State v. Marcel, No. 2017 KW 1439, 2017 WL 6618842 (La. App. 1st Cir. Dec. 28, 2017); State Rec. Vol. 2 of 9.
[14] State Rec. Vol. 2 of 9, Memorandum in Support of Supplemental Brief/Application for Post-Conviction Relief, 5/29/18 (dated 5/23/18).
[15] Id., at pp. 4-8.
[16] State Rec. Vol. 2 of 9, Memorandum in Support of Supplemental Brief/Application for Post-Conviction Relief, 7/16/18.
[17] State Rec. Vol. 2 of 9, Order, 7/26/18.
[18] Id., at p. 2.
[19] Id., at p. 1.
[20] Id.
[21] State Rec. Vol. 2 of 9, Supplemental Brief in Support of Post-Conviction Relief Application, 9/27/18.
[22] State Rec. Vol. 3 of 9, Minutes, 10/24/18; State Rec. Vol 4 of 9, Hearing Transcript, 10/24/15
[23] State Rec. Vol. 2 of 9, Judgment, 11/26/18.

improper in the prosecutor's opening statement, closing argument, or rebuttal argument.[24]   The trial court found that Marcel offered no evidence to substantiate his claim that the state exercised peremptory challenges in a discriminatory manner.[25]   The trial court further found that Marcel's claim of ineffective assistance of appellate counsel was speculative and conclusory, and that he failed to his deficient performance by his trial counsel or any resulting prejudice.[26]   Finally, the trial court found sufficient evidence supported Marcel's conviction.[27]   By separate order, the trial court denied Marcel's claim that the state improperly amended the bill of information.[28]

On April 5, 2019, the Louisiana First Circuit denied relief on the showing made as Marcel failed to include a complete copy of the district court's ruling and other pertinent portions of the record, but allowed him time to file a new writ application.[29]   Marcel's subsequent writ application was denied on August 8, 2019.[30]   On July 24, 2020, the Louisiana Supreme Court denied Marcel's related writ application finding that he failed to show that he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), and, as to his remaining claims, he failed to satisfy his post-conviction burden of proof pursuant to La. Code Crim. P. art. 930.2.[31]

On November 24, 2020, Marcel filed the instant federal application seeking habeas corpus relief raising the following claims: (1) the trial court erred in admitting "other crimes" evidence; (2) his sentence is excessive; (3) he was denied the right to testify in his own defense; (4)

---

[24] Id., at pp. 3-4.
[25] Id., at p. 4.
[26] Id., at pp. 5-7.
[27] Id., at pp. 7-9.
[28] State Rec. Vol. 2 of 9, Order, 11/26/18.
[29] State v. Marcel, No. 2018 KW 1817, 2019 WL 1504443 (La. App. 1st Cir. Apr. 5, 2019); State Rec. Vol. 2 of 9; State Rec. Vol. 9 of 9, Writ Application, 2017 KW 1439, 10/13/17 (postmarked 10/11/17).
[30] State v. Marcel, No. 2019 KW 0495, 2019 WL 3571139 La. App. 1st Cir. Aug. 5, 2019); State Rec. Vol. 2 of 9; State Rec. Vol. 6 of 9, Writ Application, 2019 KW 0495, 4/17/19 (postmarked 4/15/19).
[31] State v. Marcel, 299 So. 3d 56 (La. 2020) (per curiam); State Rec. Vol. 5 of 9; State Rec. Vol. 5 of 9, Writ Application, 19 KH 1637, 10/15/19.

prosecutorial misconduct: (5) has was denied effective assistance of trial and appellate counsel; (6) insufficient evidence; and (7) improper amendment of the bill of information.[32]  The state has filed a response conceding that that the application is timely and that Marcel's claims are exhausted.  The state claims that claim number seven is procedurally barred and the remaining claims are without merit.[33]  Marcel filed a traverse reiterating his claims.[34]

### III.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002); Langley v. Prince, 926 F.3d 145, 155 (5th Cir. 2019) (noting that the AEDPA imposes a "relitigation bar" on claims adjudicated on the merits by the state court), cert. denied, 140 S. Ct. 2676 (2020).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

---

[32] Rec. Doc. 1. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Marcel declared that he placed his petition in the prison mailing system on November 23, 2020. Rec. Doc. 1, p. 10.
[33] Rec. Doc. 8.
[34] Rec. Doc. 9.

determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 530 U.S. 415, 426 (2014). However, a federal habeas court must be mindful that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; accord Harrington v. Richter, 562 U.S. 86, 102-03 (2011) ("Section 2254(d)

reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." (quotation marks omitted)); Langley, 926 F.3d at 156 ("The Supreme Court has repeatedly held that it is not enough to show the state court was wrong."); Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). Therefore:

> "[T]he [AEDPA's] relitigation bar forecloses relief unless the prisoner can show the state court was so wrong that the error was well understood and comprehended in existing law beyond any possibility for fairminded disagreement. In other words, the unreasonable-application exception asks whether it is beyond the realm of possibility that a fairminded jurist could agree with the state court.

Langley, 926 F.3d at 156 (citations and quotation marks omitted). "Under AEDPA's relitigation bar, the very existence of reasonable disagreement forecloses relief." Id. at 170.

> Further, the Supreme Court has expressly cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Woodall, 572 U.S. at 426 (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."

Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).

In summary, "AEDPA prevents defendants – *and federal courts* – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010) (emphasis added).  The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  Woodall, 572 U.S. at 417.

## IV. Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

> Terrebonne Parish Sherriff's Office Deputy Jonathan Matherne responded to a burglary complaint on Bull Run Road in Schriever, Louisiana, on July 26, 2014. Upon arrival, Officer Matheme noticed that the victim had video surveillance and had set up a "booby trap" in the back portion of his shop near his house.  The officer viewed the surveillance footage, which showed someone wearing a white shirt walk back and forth behind the residence multiple times.  The victim identified the defendant as the person in the surveillance video.  The "booby trap" consisted of a bucket filled with diesel and purple dye attached to a saw horse.  When the saw horse was moved, the bucket turned over, spilling the liquid mixture.  The officer located shoeprints through the liquid and onto the concrete, which he photographed.
>
> Officer Matheme then spoke with the defendant, who was the victim's neighbor.  Officer Matheme later testified that the defendant resembled the person shown walking toward the victim's shop in the surveillance video.  The officer observed a plastic container filled with water and white clothes as well as a pair of shoes outside of his home.  The officer smelled a heavy odor of detergent and bleach, and he noticed that the shoes were wet.  The shoes had recently been cleaned, but there was a purple substance between a crack in their sole.  The officer also observed two "drag marks" leading toward the woods directly behind the defendant's home that were consistent with someone dragging a generator or pressure washer.  Officers followed the trail of the marks and located some of the victim's stolen items, including a generator and pressure washer.  Other stolen items were located across the street from the victim's home.  Certain other items, including a rifle and tools, were never recovered.  According to the trial testimony, the investigating officers took the wet shoes from the defendant's home and compared them to the print left in the purple dye mixture.  The officers testified that the impression from the shoe that was photographed was very similar to the tread pattern on the recovered shoes.  Officers also found a Bose remote controller in the

defendant's pocket, which the victim identified as one that was stolen from him two weeks prior. The defendant was advised of his rights and stated that he was at his home all day, but denied any involvement in the burglary of his neighbors shop and property.[35]

## V. Petitioner's Claims[36]

### A. Improper Amendment of Bill of Information (Claim No. 7)

Marcel claims that the state improperly amended the bill of information prior to trial from simple burglary of an inhabited dwelling to simple burglary. Marcel claims that simple burglary is not a lesser included verdict to simple burglary of an inhabited dwelling. He concludes that the trial court abused its discretion in allowing the state to amend the bill of information to a nonresponsive charge.

Marcel raised this issue in one of his supplemental applications for post-conviction relief.[37] The trial court denied the claim noting that the post-conviction hearing had been held, the matter was deemed submitted, and a judgment of dismissal on all claims had already been entered.[38]

While the state asserts that this claim is procedurally barred, the Louisiana Supreme Court did not adopt the trial court's findings. Rather, the Louisiana Supreme Court found that Marcel failed to meet his post-conviction burden of proof as to his claims not related to ineffective assistance of counsel, citing La. Code Crim P. art. 930.2.[39]

Article 930.2 provides that "[t]he petitioner in an application for post conviction relief shall have the burden of proving that relief should be granted." Courts have found that the Louisiana Supreme Court's citation to La. Code Crim. P. art. 930.2 that does not also include a citation to

---

[35] State v. Marcel, No. 2015 KA 1805, 2016 WL 3126440, at *1 (La. App 1st Cir. Jun. 3, 2016); State Rec. Vol. 1 of 9.

[36] For ease of analysis, this Report and Recommendation addresses petitioner's claims in a different order than they were listed in his federal application.

[37] State Rec. Vol. 2 of 9, Supplemental Brief in Support of Post-Conviction Relief Application, 9/27/18.

[38] State Rec. Vol. 2 of 9, Order, 11/26/18.

[39] Marcel, 299 So. 3d at 56; State Rec. Vol. 5 of 9

any other grounds is a decision on the merits and does not constitute a state procedural bar.  See Cotton v. Tanner, 18-539-BAJ-RLB, 2019 WL 7197668, at *4 (M.D. La. Nov. 6, 2019), adopted, 2019 WL 7195609 (M.D. La. Dec. 26, 2019); Mincey v. Cain, 14-cv-782, 2016 WL 1586835, at *6 (W.D. La. Jan. 26, 2016), adopted, 2016 WL 1545791 (W.D. La. Apr. 4, 2016); Brydels v. Warden, Louisiana State Penitentiary, No 13-0094, 2014 WL 2735887, at *4 (W.D. La. Jun. 16, 2017); Gallow v. Cooper, Civ. Action No. 04-1905, 2010 WL 3522457, at *8 (W.D. La. Jul. 30, 2010), adopted, 2010 WL 3522481 (W.D. La. Aug. 31, 2010), aff'd, 505 F. App'x 285 (5th Cir. 2012).

In this case, the Louisiana Supreme Court only cited to La. Code Crim. P. art. 930.2.  As a result, the court rejects the state's position that this claim is procedurally barred and will address the merits of the claim.

Importantly, whether the amendment of the information violated state law is not subject to review in this forum.  Indeed, to the extent petitioner may claim that the ruling permitting amendment to the bill of information constituted error or an abuse of discretion under Louisiana law, such is not a cognizable claim for federal habeas review.  28 U.S.C. § 2254(a); see also Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Thus, insofar as Marcel's claims rest upon the proper interpretation and application of state procedural law, it does not provide him a basis for federal habeas relief.

To the extent the amendment of the information implicates due-process concerns, however, the issue does involve a cognizable federal habeas claim.  Due process requires that the court grant the writ only when the errors of the state court make the underlying proceeding fundamentally unfair.  Neyland v. Blackburn, 785 F.2d 1283, 1293 (5th Cir. 1986).  The United States Supreme

Court has held that an indictment or bill of information is sufficient if it both informs the defendant of the accusation against him so as to enable him to prepare his defense, and affords him protection against double jeopardy. United States v. Debrow, 346 U.S. 374 (1953). The question of fundamental fairness under the Due Process Clause presents a mixed question of law and fact. Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994).

There is nothing to support any contention by Marcel that the amendment to the bill of information was fundamentally unfair. Marcel was originally charged with simple burglary of an inhabited dwelling. Three days before the trial in his case, the prosecution amended the charge to simple burglary. Defense counsel noted in open court that he was not prejudiced by the amendment of the bill of information.[40] The nature of the charge was clear to defense counsel, and, under the circumstances, the planned defense of the matter would not have changed. Contrary to Marcel's claim, simple burglary is in fact a lesser included offense to a charge of simple burglary of an inhabited dwelling. See La. Rev. Stat. §§ 14:62 and 14:62.2; State v. Spindler, 477 So. 2d 872, 874 (La .App. 4th Cir.1985); see also State v. Falls, 508 So.2d 1021 (La. App. 5th Cir.1987).

For these reasons, in reviewing this mixed question of law and facts, Marcel has not shown that the decision by the state court was contrary to or an unreasonable application of clearly established Supreme Court law. Consequently, Marcel is not entitled to relief as to this claim.

## B.    Sufficiency of the Evidence (Claim No. 6)

Marcel next claims that insufficient evidence supports his conviction for the crime of simple burglary. He alleges that the footage from Robichaux's surveillance camera was blurry and a positive identification could not be made.

Marcel raised this claim in his application for post-conviction relief. The trial court found:

---

[40] State Rec. Vol. 4 of 9, Transcript, p. 45, 4/17/15.

> After a thorough review of the record in the light most favorable to the
> prosecution, the Court finds the evidence was more than sufficient to support the
> conviction of simple burglary.  The Court is convinced that viewing the evidence
> in the light most favorable to the State, any rational trier of fact could have found
> beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of
> innocence, that Marcel was guilty of simple battery.  Relief will not be granted on
> this claim."[41]

The Louisiana Supreme Court found that Marcel failed to meet his post-conviction burden of
proof.[42]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this
Court must defer to the state court's decision rejecting this claim unless petitioner shows that the
decision was "contrary to, or involved an unreasonable application of, clearly established Federal
law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Davila v.
Davis, 650 F. App'x 860, 866 (5th Cir. 2016), aff'd, 137 S. Ct. 2058 (2017).  The petitioner has
not done so.

Claims challenging the sufficiency of the evidence are to be analyzed pursuant to the
standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson, the United States
Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing
the evidence in the light most favorable to the prosecution, any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Accordingly,
"[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or
innocence determination, but rather whether it made a *rational* decision to convict or acquit.' "
Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390,
402 (1993)) (emphasis added); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) ("[A] federal court
may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply

---

[41] State Rec. Vol. 2 of 9, Judgment on Post-Conviction Relief Claims, p. 9, 11/26/18.
[42] Marcel, 299 So. 3d at 56; State Rec. Vol. 5 of 9.

because the federal court disagrees with the state court. ... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").  Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."  Parker v. Matthews, 567 U.S. 37, 43 (2012); see also Coleman v. Johnson, 566 U.S. 650, 651 (2012) ("We have made clear that Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.").

Further, contrary to Marcel's contention, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal habeas corpus proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof.  Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 F. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 F. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 F. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 566 U.S. at 655 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

Marcel was charged with and convicted of simple burglary. Simple burglary is defined as "the unauthorized entering of any … other structure … with the intent to commit a felony or any theft therein…." La. Rev. Stat. § 14:62(A). Theft is defined by La. Rev. Stat. § 14:67(A) as "the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential." State v. Kennerson, 695 So. 2d 1367, 1371-72 (La. App. 3d Cir. 1997).

Simple burglary requires specific intent, which is defined as that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. Rev. Stat. § 14:10(1). Specific intent need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Harris, 812 So.2d 612 (La. 2002).

As noted, Marcel contests the sufficiency of the evidence regarding his identification as the perpetrator of the simple burglary. He contends that the surveillance camera footage was blurry and prevented a positive identification. He further contends that neighbors were not able to identify the person depicted in the camera footage.

Under Louisiana law, in addition to proving the statutory elements of the charged offense at trial, the state is required to prove a defendant's identity as a perpetrator. State v. Draughn, 950 So. 2d 583, 593 (La.), cert. denied, 552 U.S. 1012 (2007); State v. Thomas, 192 So. 3d 291, 303 (La. App. 5th Cir. 2016); State v. Ingram, 888 So. 2d 923, 926 (La. App. 5th Cir. 2004). Where the key issue is identification, the state is required to negate any reasonable probability of misidentification. Id. However, a positive identification by only one witness is sufficient to

support a conviction.  State v. Williams, 3 So. 3d 526, 529 (La. App. 5th Cir. 2008).  A positive

identification by a victim, as well as the victim's testimony alone, also is sufficient identification

evidence regarding the crime committed against that victim.  Holderfield v. Jones, 903 F. Supp.

1011, 1017 (E.D. La. 1995) (citing State v. Turner, 591 So. 2d 391 (La. App. 2d Cir. 1991)).

Discrepancies in witness testimony go to credibility, which is a matter left to the judgment of the

trier of fact, and an appellate court cannot reassess a credibility determination.  State v. Thomas,

13 So. 3d 603, 607 (La. App. 5th Cir. 2008).

In this case, Jonathan Matherne from the Terrebonne Parish Sheriff's Office testified that

he responded to a burglary complaint on Bull Run Road on July 26, 2014.[43]  The complainant had

set up a "booby trap" in the back portion of his shed with a bucket full of liquid and purple dye.[44]

Matherne observed purple liquid as well as footprints and took pictures of the scene.[45]  Matherne

watched the complainant's surveillance video depicting a perpetrator making multiple passes in

the back of the residence.[46]  While waiting for a response from the detectives, Matherne

approached Marcel in his backyard.[47]  Matherne testified that, while the video was blurry, Marcel

resembled the person depicted in the video.[48]  Matherne observed a plastic container filled with

water and clothes that smelled of detergent and bleach in Marcel's yard.[49]  Matherne also observed

a pair of wet shoes that he could tell had been cleaned.[50]  Matherne saw a blue, purplish substance

in the bottom of the sole of a shoe.[51]  Matherne observed drag marks towards the woods behind

---

[43] State Rec. Vol. 4 of 9, Trial Transcript (con't), p. 89, 4/21/15.
[44] Id., at pp. 90, 92.
[45] Id., at pp. 90, 92-93.
[46] Id., at p. 91.
[47] Id., at p. 93.
[48] Id., at pp. 98, 103.
[49] Id., at pp. 93-94.
[50] Id., at pp. 93-95.
[51] Id., at p. 95.

Marcel's house consistent with someone dragging a generator or pressure washer on wheels.[52] After Marcel waived his <u>Miranda</u> rights, Marcel claimed that a person by the name of "Mike" had committed the burglary.[53]   Many of missing items taken from the complainant's shed were recovered behind Marcel's property.[54]

Detective Donald Bourg testified that he responded to the burglary at Bull Run on July 26, 2014.[55]   The homeowner explained that he had had set a booby trap of purple dye and another liquid, and Bourg observed footprints on the concrete.[56]   Bourg questioned Marcel who was already in custody, and Marcel claimed that "Mike" was the perpetrator.[57]   Deputies located many of the missing items in the brush behind Marcel's property.[58]   They located wet shoes in Marcel's yard and used them for a comparison to the shoe impressions in the purple dye.[59]   Bourg testified that the shoes and impressions matched to a "fair degree."[60]   He explained that the footprints were very similar to a rectangular pattern on sole of the shoes.[61]   Bourg admitted that he could not identify the perpetrator's facial features from the video surveillance.[62]   He, however, testified that he could identify from the surveillance video that the suspect was wearing a white t-shirt, and, that at some point, the suspect was not wearing a t-shirt at all.[63]   He further testified that all the clothing found in Marcel's laundry basket was white.[64]

---

[52] <u>Id.</u>, at p. 99.
[53] <u>Id.</u>, at pp. 95-97, 99.
[54] <u>Id.</u>, at p. 104.
[55] <u>Id.</u>, at p. 115.
[56] <u>Id.</u>, at p. 116.
[57] <u>Id.</u>, at pp. 116-17.
[58] <u>Id.</u>, at p. 118.
[59] <u>Id.</u>, at pp. 119-20.
[60] <u>Id.</u>, at p. 121.
[61] <u>Id.</u>
[62] <u>Id.</u>, at p. 146.
[63] <u>Id.</u>
[64] <u>Id.</u>, at p. 147.

Todd Robichaux, the complainant, explained that there was approximately 75 feet between his property and the property where Marcel lived.[65]  Robichaux testified that he set up a booby trap along with a surveillance camera in July 2014 after he was burglarized twice.[66]  Robichaux positively identified Marcel as the perpetrator seen on the surveillance video.[67]  He explained that he identified Marcel based on his distinctive stride, his build, and body position.[68]  Robichaux testified that he had no doubt that Marcel was the perpetrator seen in the video.[69]  Robichaux testified that the video depicted Marcel going back and forth to his property and carrying things away at least twelve times.[70]  He testified that many of the items taken from his shed were found in the woods behind Marcel's property.[71]  Robichaux testified about a specific portion of the video surveillance that depicted Marcel pulling a generator, which was later found behind Marcel's house.[72]  Robichaux testified that the a later portion of the video showed Marcel wearing different clothes, but that he could still identify him by his walk and stature.[73]  He explained that some of the items were found elsewhere and others were never found.[74]  Robichaux was familiar with "Mike," but testified that he had not seen him in the area during the previous four to five days before the burglary.[75]

Kim Kendall testified that Michael Dupre previously lived with her mom on the Bull Run Road.[76]  According to Kim Kendall, her mother asked Dupre to leave, and Kendall picked him up

---

[65] Id., at p. 152.
[66] Id., at pp. 153-55.
[67] Id., at pp. 164, 177.
[68] Id.
[69] Id.
[70] Id., at pp. 164-70, 172-73.
[71] Id., at pp. 162-63.
[72] Id., at p. 168.
[73] Id., at p. 172.
[74] Id., at p. 176-77.
[75] Id., at p. 194.
[76] Id., at p. 198.

and bought him some necessities from Walmart and drove him to the bus station in New Orleans on July 13, 2014.[77]  Kim Kendall had the receipt from Walmart depicting the items she had purchased for Dupre.[78]  She later wired money to Dupre in Biloxi, Mississippi.[79]  Her mother received Dupre's mail at her house and Kim Kendall recalled opening multiple bills addressed to Dupre from an emergency room located in Biloxi.[80]

Gracie Kendall, who lives on Bull Run Road, testified that her nephew Michael Dupre lived with her, but that she asked him to leave on July 13, 2014.[81]  Gracie Kendall had not seen Dupre since he left and had no knowledge that he returned to the area.[82]  She testified that she was not at her home when the burglary occurred, but she found a number of items on the deck of a trailer on her property.[83]

Although Marcel continues to insist that he was not the perpetrator, the testimony of Robichaux and others established otherwise.  It is clear that, even alone, the testimony of a single eyewitness or a victim, if found credible by the trier of fact, is sufficient to prove a perpetrator's identity and support a resulting conviction.  United States v. King, 703 F.2d 119, 125 (5th Cir. 1983) ("[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." (quotation marks omitted)); Cameron v. Vannoy, Civ. Action No. 18-9502, 2020 WL 2520714, at *10 (E.D. La. May 18, 2020) ("Under both federal and Louisiana law, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the testimony of an eyewitness is generally sufficient to support a conviction."); Bonney v. Tanner, Civ. Action No. 18-7978, 2019 WL 5790808, at *12 (E.D. La. June 7, 2019)

---

[77] Id., at pp. 198-99.
[78] Id., at p. 199.
[79] Id., at p. 203.
[80] Id., pp. at 203-05.
[81] Id., at pp. 207-08.
[82] Id., at p. 209.
[83] Id., at pp. 209-10.

("[A] positive identification by only one witness is sufficient to support a conviction.  A positive identification by a victim, as well as the victim's testimony alone, also is sufficient identification evidence regarding the crime committed against that victim." (citation omitted)), adopted, 2019 WL 5784998 (E.D. La. Nov. 6, 2019); Holderfield v. Jones, 903 F. Supp. 1011, 1017 (E.D. La. 1995) ("A victim's positive identification (or by any one witness) of a defendant as well as the victim's testimony alone has been held to constitute sufficient evidence regarding the crime committed against the victim.").

To the extent that Marcel is arguing that the jurors should not have found the state's witnesses credible, that simply is not for this court to say.  Credibility determinations are the province of the jurors, and a federal habeas court generally will not grant relief on a sufficiency claim grounded on such matters of credibility.  See Schlup v. Delo, 513 U.S. 298, 330, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) ("[U]nder Jackson [v. Virginia] 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)], the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir.2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93–5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the Jackson standard for habeas relief."); Phillips v. Cain, Civ. Action No. 11–2725, 2012 WL 2564926, at *14 (E.D. La. April 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06–6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was irrational.  Therefore, Marcel cannot show that the state courts' decision rejecting his claim was contrary to, or involved an

unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, under the doubly deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

## C.   Admission of Other Crimes Evidence (Claim No. 1)

Marcel's next claim is that the trial court erred in admitting evidence of his other crimes. He claims that the evidence served no other purpose other than to show he had committed prior burglaries and acted in conformity therewith.  He claims that the evidence was more prejudicial than probative under La. Code Evid. art. 404(B).  Marcel further claims that there is a reasonable probability that the evidence contributed to the verdict.

On direct appeal, the Louisiana First Circuit Court of Appeal denied Marcel's claim holding:

> In his first assignment of error, the defendant contends that the district court erred in allowing other crimes evidence from nine witnesses rather than "a more selective presentation of [the] evidence."  Specifically, he argues that the district court improperly allowed the State to call nine witnesses regarding eight other crimes, which "served no purpose other than to prove that [the defendant] had committed prior burglaries and acted in conformity therewith."  The defendant also complains that calling nine witnesses was more prejudicial than probative "when a selection of a few of the more similar crimes would have accomplished the same purpose without prejudicing the jury."
>
> Prior to trial, the State filed a notice of its intent to use other crimes, wrongs, or acts of the defendant, including eleven of the defendant's prior convictions, pursuant to LSA–C.E. art. 404(B), to show proof of opportunity, intent, preparation, plan, knowledge, identity, absence of mistakes or accident at trial.  The defendant filed a motion in limine to prohibit the introduction of the other crimes evidence.
>
> At the hearing on the State's notice of intent and the defendant's motion in limine, the defense specified that its motion was not limited to the eleven convictions listed in the State's notice of intent, but also extended to evidence of any other crimes or bad character traits and any opinion testimony regarding the source of the footprints or shoeprints involved in the case.  The State offered into evidence the bills of information, transcripts, minutes, and police reports for the defendant's prior convictions.

**(1) Possession of Stolen Things under Docket Number 268,501**

The first offense that the State sought to introduce was the defendant's 1996 conviction for possession of stolen things (valued between $100.00 and $500.00) belonging to Kelly Martinez and Brandi Anderson. The State pointed out that this prior offense was similar to the instant offense because it occurred during the day, and the stolen items were taken from a home on Bull Run Road and subsequently pawned, which it claimed was relevant to the defendant's intent. The defendant argued that because the crime was for possession of stolen things and was committed eighteen years prior to the instant offense, it was not relevant. The district court allowed the State to present evidence of this prior offense at trial.

**(2) Simple Burglary under Docket Number 306,364**

The second offense that the State sought to introduce was the defendant's 1998 conviction for simple burglary, wherein the defendant stole a television, VCR, power tools, a boiling pot, and gumbo bowls from Denise Fritch's residence at 1940 Bull Run Road and sold them at a pawn shop. The State argued that the defendant's knowledge of the area, the sale of the items to a pawn shop, and the fact that the defendant denied committing the offense demonstrated the defendant's modus operandi, motive, intent, and knowledge. According to the defendant, the 1998 simple burglary was not similar in any way to the instant offense, other than the fact that it was the burglary of a neighbor's dwelling. The district court allowed the State to present evidence of this prior offense at trial.

**(3) Misdemeanor Theft under Docket Number 318,952 and (4) Forgery/Simple Escape under Docket Number 318,826**

The third and fourth offenses that the State sought to introduce at trial involved the defendant's charges of misdemeanor theft of a tool in Walmart and forgery/simple escape. Both offenses were nol-prossed by the State pursuant to the defendant's plea agreement under docket number 306,364. The district court did not allow the State to present evidence of these two charges at trial.

**(5) Theft under Docket Number 443,654**

The fifth offense that the State sought to introduce at trial was the defendant's 2005 conviction of felony theft of limestone and diesel from a business entity for which he previously worked. The State argued that evidence of this offense established the defendant's guilty knowledge, intent, and motive because the offense took place during daylight hours and was an opportunity for "easy pickings to go and take stuff." The defendant responded that the offense was not relevant because the theft was from a business that the defendant "had some sort of access to." The district court allowed the State to introduce evidence of this offense.

### (6) Simple Burglary of an Inhabited Dwelling under Docket Number 530,426

The sixth offense that the State sought to introduce was the defendant's 2008 conviction of simple burglary of an inhabited dwelling belonging to Karl Unbehagen at 1706 Bull Run Road during daylight hours. The defendant entered the bathroom window of the residence and stole a table saw. The State argued that this offense was similar to the instant offense because it occurred on Bull Run Road, during the day, the defendant entered through a window, and the defendant stole an "easily pawnable" table saw. The defendant argued that the prejudicial effect of introducing the offense would outweigh any probative value. The district court allowed the State to introduce evidence of this offense.

### (7) Theft under Docket Number 522,359

The seventh offense that the State sought to introduce was the defendant's 2008 conviction of misdemeanor theft, wherein the defendant stole copper from a trailer that burned on Bull Run Road. The State argued that the offense was similar to the instant offense because it occurred on Bull Run Road, and the defendant stole something that was "easily scrapable," then denied committing the offense. The defendant argued that the relevance was "slight" because the offense was not a burglary. The district court allowed the State to introduce evidence of this offense.

### (8) Theft under Docket Number 530,798

The eighth offense that the State sought to introduce was the defendant's 2008 conviction for theft, wherein the defendant stole an outdoor fireplace from Norma Donaldson's residence on Bull Run Road during daylight hours. The State argued that the offense showed the defendant's familiarity with the area, intent, motive, and the theft of something "easily pawnable." The defendant argued that because this offense did not involve entering a dwelling or structure, the relevancy far outweighed the prejudicial effect. The State responded that the stolen item was in the victim's backyard, and although the defendant did not break into a house or dwelling to take the item, he did trespass onto the victim's property. The district court allowed the State to introduce evidence of this offense at trial.

### (9) Theft under Docket Number 635,833

The ninth offense that the State sought to introduce was the defendant's conviction of theft for taking a six-pack of beer from a distributing truck. The district court did not allow the State to introduce evidence of this offense.

### (10) Theft under Docket Number 639,752

The tenth offense that the State sought to introduce was the defendant's conviction of theft of tools from a house in Bayou Blue. The State argued that the fact pattern of this offense was very similar to that of the instant offense and relevant to the defendant's motive, intent, and modus operandi because the defendant saw an "easily pickable situation in a rural area[.]" The defendant argued that the prejudicial effect outweighed any probative value. The district court allowed the State to introduce evidence of this offense at trial.

### (11) Theft under Docket Number 664,310

The last offense that the State sought to introduce was the defendant's 2014 conviction for theft (amount between $500.00 and $1,500.00), wherein the defendant stole industrial batteries located at a church in Schriever, Louisiana, and sold them to a scrapyard.[2] The State argued that this offense was the "same type of situation" because the defendant sold the batteries at a scrapyard showing his motive and intent, and also because the church from which the defendant stole the batteries was near Bull Run Road. The defendant argued that theft of batteries from a church did not fit the facts of the instant case and also that the defendant did not "scrap" the batteries; rather, the batteries were taken to the scrapyard by a codefendant. The State responded that, as in other cases, the defendant denied involvement and blamed his co-defendant for the theft, establishing the defendant's modus operandi. The district court allowed the State to introduce evidence of this offense at trial.

[2] A deacon of the church owned a battery recycling company and stored the batteries for his business at the church.

The State argued that "virtually every [prior offense] was either during the day, broad daylight, something that could easily be pawned or scrapped at a scrap yard or a burglary, some of the burglaries tools that were stolen. It shows intent of [the defendant]." The defendant argued that the prior offenses were not "peculiarly distinctive" or so related to the crime on trial or a material issue that if admitted their relevancy would outweigh their prejudicial effect.

In rendering its ruling, the district court cited <u>State v. Hardy</u>, 2014–1569 (La.11/21/14) 154 So.3d 537, 539 (per curiam ), wherein the Supreme Court found that evidence of the defendant's prior burglary convictions was probative because they were sufficiently similar to his simple burglary charge and substantially relevant to the question of whether he had specific intent to commit a theft when he entered the residence rather than entering for an innocent purpose. The district court pointed out that almost all of the other offenses that he allowed the State to introduce were committed in the same area of Bull Run Road and were very similar in that the defendant stole items to pawn and sell.

At trial, the State presented evidence of the defendant's prior convictions including:

### Possession of Stolen Things under Docket Number 268,501

In 1995, the defendant plead guilty to possession of stolen things (valued between $100.00 and $500.00) belonging to Kelly Martinez and Brandi Anderson. Terrebonne Parish Sherriff's Office Captain David LeBoeuf testified that the burglary occurred at a home on Bull Run Road during the day and that a microwave, VCR, and television were taken.  The items were recovered in a pawn shop in Morgan City.

### Simple Burglary under Docket Number 306,364

In 1998, the defendant pled guilty to simple burglary of an inhabited dwelling.  The burglary occurred while the victim, Denise Fritch, who lived at 1940 Bull Run Road, was on vacation.  Items stolen included appliances, fishing equipment, and tools.  Another stolen item, a gumbo bowl, was found in the defendant's residence.

### Theft under Docket Number 443,654

In 2005, the defendant pled guilty to theft of goods (valued at $500.00 or more).  The defendant stole a large amount of limestone and some diesel from his employer on September 7, 2004.

### Simple Burglary of an Inhabited Dwelling under Docket Number 530,426

In 2008, the defendant pled guilty to simple burglary of an inhabited dwelling.  When the victim returned to his home on Bull Run Road after being out of town for the day, he discovered that a window had been broken, and someone had defecated on his living room floor.  Additionally, a table saw, fan, extension cords, and hand tools were taken from his home.

### Theft under Docket Number 522,359

In 2008, the defendant pled guilty to theft (amount less than $300.00). Terrebonne Parish Sherriff's Office Lieutenant Troy Boquet testified that he investigated the theft of copper and plywood from a burned-down trailer next to the defendant's home. He questioned the defendant, who indicated that he took plywood, but not any copper, from the scene.

### Theft under Docket Number 530,798

In 2008, the defendant pled guilty to theft (amount less than $300.00). Norma Donaldson testified that a four-foot tall outdoor fireplace was stolen from her home on Bull Run Road and subsequently located at the defendant's home.

### Theft under Docket Number 639,752

In 2013, the defendant plead guilty to theft (value between $500.00 and $1,500.00). Andre Guilfou testified that tools were stolen from his shed in Blue Bayou while he was at work. He stated that the defendant was working at his house six months prior to the theft, and the defendant had knowledge of the contents of his shed. Terrebonne Parish Sherriff's Office Detective Chris Dehart testified that he investigated the incident, and the defendant was arrested for the offense.

**Theft under Docket Number 664,310**

In 2014, the defendant pled guilty to theft (value between $500.00 and $1,500.00). Thomas Novak, who owns a battery recycling company, testified that in 2013, approximately forty batteries were stolen from his inventory which he kept at the church where he served as a deacon. He proceeded to a nearby scrapyard where he located his batteries. He contacted the police and learned that the batteries were stolen by the defendant and another man.

Louisiana Code of Evidence article 404(B)(1) provides:

Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other crimes evidence is inadmissible unless it has an independent relevancy besides simply showing a criminal disposition. State v. Lockett, 99–0917 (La. App. 1st Cir. 2/18/00), 754 So.2d 1128, 1130, writ denied, 2000–1261 (La. 3/9/01), 786 So.2d 115. A district court's ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. State v. Galliano, 2002–2849 (La. 1/10/03), 839 So.2d 932, 934 (per curiam ).

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. LSA–C.E. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence which is not relevant is not admissible. LSA–C.E. art. 402. Although

relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or waste of time. LSA–C.E. art. 403.

Before other crimes evidence can be admitted as proof of intent, three prerequisites must be satisfied: (1) the prior acts must be similar; (2) there must be a real and genuine contested issue of intent at trial; and (3) the probative value of the evidence must outweigh its prejudicial effect. See LSA–C.E. arts. 403 & 404(B); State v. Day, 2012–1749 (La. App. 1st Cir. 6/7/13), 119 So.3d 810, 814–15. Where the element of intent is regarded as an essential ingredient of the crime charged, it is proper to admit proof of similar but disconnected crimes to show the intent with which the act charged was committed. Id. at 815; see also State v. Blank, 2004–0204 (La. 4/11/07), 955 So.2d 90, 125–26, cert denied, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007); State v. Williams, 96–1023 (La. 1/21/98), 708 So.2d 703, 725–26, cert. denied, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998).

As to the first requirement, in this case, the prior acts were similar to the offense being tried. The offenses took place in generally the same area, were committed during daylight hours, and involved the taking of items that could easily be pawned or sold.

Second, in this case, intent was a genuine issue at trial, in that specific intent is an essential element of the crime of simple burglary. In order to convict the defendant of simple burglary, the State was required to prove beyond a reasonable doubt that the defendant entered a dwelling or other structure with the intent to commit a felony or any theft therein. See LSA–R.S. 14:62; Hardy, 154 So.3d at 539 ("[s]imple burglary requires proof of specific intent that the perpetrator who made the unauthorized entry did so with the specific intent of committing a theft or other felony once inside."). Evidence, therefore, of the defendant's involvement in prior burglaries, acts of theft, and possession of stolen things had an independent relevance to show intent pertaining to the instant offense and was therefore admissible for this purpose under Article 404(B)(1). See Day, 119 So.3d at 815. That some of the prior convictions occurred several years before the instant offense had no bearing on their admissibility in this case. Remoteness in time, in most cases, is only one factor to be considered when determining whether the probative value of the evidence outweighs its prejudicial effect. Generally, a lapse in time will go to the weight of the evidence, rather than to its admissibility. State v. Jackson, 625 So.2d 146, 149 (La. 1993).

As to the third element, the defendant argues that he was unduly prejudiced by the introduction of these offenses. In determining whether the probative value of evidence outweighs its prejudicial effect, the underlying policy is not to prevent prejudice (since evidence of other crimes is always prejudicial), but to protect against unfair prejudice when the evidence is only marginally relevant to the

determination of guilt of the charged crime. <u>State v. Humphrey</u>, 412 So.2d 507, 520 (La. 1981) (on rehearing).

Based on the facts and circumstances herein, we conclude that the other crimes evidence at issue was relevant to the defendant's motive, knowledge, and plan. Therefore, we find no abuse of discretion in the district court's ruling that evidence of the defendant's convictions for theft, simple burglary, and possession of stolen things were admissible at the instant trial. In its jury charges following closing arguments, the district court instructed the jury on the limited nature of the other crimes evidence, stating that evidence that the defendant was involved in the commission of offenses other than the instant offense was to be considered only for a limited purpose, and the sole purpose for which such evidence may be considered is whether it tends to show the defendant's motive, opportunity, plan, knowledge, identity, or absence of mistake or accident. The court also instructed the jury that it "cannot find [the defendant] guilty of this offense merely because he may have committed some other offense."

Nonetheless, even if we were to determine that the other crimes evidence was improperly admitted in this case, that would not end our inquiry, as the erroneous admission of other crimes evidence is a trial error subject to harmless error analysis. The standard applied in making this determination is whether the verdict rendered was surely unattributable to the error. <u>See</u> <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); <u>State v. Johnson</u>, 94–1379 (La. 11/27/95), 664 So.2d 94, 101–102. In the instant case, the victim identified the defendant, whom he knew as his neighbor, as the person seen walking back and forth in the surveillance video. Officer Matherne confirmed that the person in the surveillance video resembled the defendant. When officers went to the defendants home to question him, they observed tennis shoes with a purple substance in a crack of the sole as well as white clothing being washed or bleached. Moreover, many of the stolen items were found in the woods behind the defendant's home. Based on our review of the record, we find that the guilty verdict returned in the instant case was surely unattributable to any error in the admission of the extraneous other crimes evidence. Thus, even if the admission of the evidence were erroneous, the error was harmless beyond a reasonable doubt. <u>See</u> LSA–C.Cr.P. art. 921.

Accordingly, this assignment of error is without merit.[84]

The Louisiana Supreme Court then denied Marcel's related writ application without assigning additional reasons.[85]

---

[84] <u>Marcel</u>, 2016 WL 3126440, at *2-8; State Rec. Vol. 1 of 9.
[85] <u>Marcel</u>, 221 So. 3d at 855; State Rec. Vol. 1 of 9.

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." <u>Little v. Johnson</u>, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is simply arguing that the state courts misapplied state evidence law, his claim is not reviewable in this federal proceeding. <u>See, e.g.</u>, <u>Pettus v. Cain</u>, Civ. Action No. 14-1685, 2015 WL 1897711, at *7 (E.D. La. Apr. 27, 2015).

Moreover, to the extent that petitioner is perhaps claiming that his federal right to due process was violated by the admission of the "other crimes" evidence, he fares no better for the following reasons.

First, a state court decision denying such a claim could be the basis for federal habeas corpus relief only if the decision were "contrary to" or an "unreasonable application of" clearly established federal law. <u>See</u> 28 U.S.C. § 2254(d)(1). Significantly, the United States Supreme Court has never held that the admission of other "other crimes" evidence can serve as the basis for a due process violation. <u>See</u> <u>Wright v. Van Patten</u>, 552 U.S. 120, 126 (2008) (holding that when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law" (quotation marks and brackets omitted) ). "Absent controlling Supreme Court precedent on the issue [of whether the admission of prior crimes evidence violates due process], the state courts' determination cannot be said to be contrary to, or an unreasonable application of, clearly established federal law." <u>Wallace v. Deville</u>, No. 17-407, 2017 WL 2199024, at *16 (E.D. La. Apr. 26, 2017), <u>adopted</u>, 2017 WL 2198957 (E.D. La. May 18, 2017).

28

Second, Marcel's claim also fails under the normal due process analysis applied to evidentiary claims.  With respect to such claims, the United States Fifth Circuit Court of Appeals has explained:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause.  The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); accord Little, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").  Under these standards, to establish a fundamentally unfair trial, a petitioner must show a reasonable probability that the verdict would have been different had the trial been properly conducted.  Kirkpatrick v. Blackburn, 777 F.2d 272, 279 (5th Cir. 1985).  Marcel's claim fails under that analysis for the following reasons.

Even if Marcel could show that the evidence was in fact improperly admitted, which is doubtful for the reasons noted by the Louisiana First Circuit Court of Appeal, federal habeas relief still would not be warranted because it simply cannot be said that the "other crimes" evidence played a crucial, critical, and highly significant role in the instant convictions.  As an initial matter, it must be noted that the jurors were carefully instructed by the court regarding the limited purposes for which the "other crimes" evidence could be considered,[86] and courts have repeatedly held that jurors are presumed to follow their instructions.  See, e.g., Jones v. United States, 527 U.S. 373, 394 (1999); United States v. Ornelas-Rodriguez, 12 F.3d 1339, 1349 (5th Cir. 1994).  Further, and more importantly, it must be remembered that: (1) the burglary was captured on video; (2) video surveillance showed a person walking back and forth from Robichaux's yard and carrying items

---

[86] State Rec. Vol. 4 of 9, Trial Transcript, pp. 66-67, 4/22/15.

away toward Marcel's property; (3) Robichaux, Marcel's neighbor, positively identified Marcel as the perpetrator; (4) Matherne testified that the person depicted on the surveillance video looked like Marcel; (5) many of the items taken were found in the woods behind Marcel's property; and (6) Marcel was found to be in possession of wet shoes that had purple dye in the sole and freshly laundered white clothing.  Obviously, therefore, even without the "other crimes" evidence, there was ample independent evidence that Marcel was guilty of the charged offense

For all of these reasons, Marcel has not shown that the state courts' decision was contrary to or an unreasonable application of clearly established Supreme Court law.  Marcel is not entitled to relief as to this claim.

**D.    <u>Prosecutorial Misconduct (Claim No. 4)</u>**

Marcel claims that the prosecutor engaged in misconduct during opening statement and closing arguments.  He specifically points to three statements.  First, he claims that the prosecutor informed the jury during closing argument that Detective Bourg identified Mr. Marcel in the video. Second, he points to the prosecutor's rebuttal argument that Marcel could have subpoenaed Robichaux's wife and son to testify.  Third, he claims that the prosecutor improperly placed the jurors in a "life-like" situation when he asked jurors in opening statement to consider how they would feel if they lived on the street.

Marcel raised this claim in his application for post-conviction relief.  The trial court, in denying the claim, found:

> The Court has reviewed the trial transcripts and finds that, although the prosecutor's opening statements, and closing argument, and rebuttal argument were passionate, they were not improper.  The prosecutor did not imply that he had personal knowledge of Marcel's guilt outside of the evidence admitted at trial. Jurors are presumed to follow their instructions.  See e.g., <u>Jones v. United States</u>, 527 U.S. 373, 394 (1999).  The Court instructed the jurors several times that their verdict was to be made on the basis of the evidence alone, and that counsel's arguments are not evidence.  After reviewing the complete trial record, the court

finds that the prosecutor's opening statement and closing arguments did not influence the jury or contribute to the guilty verdict. Relief will not be granted on this claim.[87]

The Louisiana Supreme Court denied relief finding that Marcel failed to meet his post-conviction burden of proof.[88]

A prosecutor's comment does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the trial was rendered fundamentally unfair in violation of the Due Process Clause. Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citations and quotations omitted); accord Rogers v. Lynaugh, 848 F.2d 606, 608 (5th Cir. 1988); Bell v. Lynaugh, 828 F.2d 1085, 1095 (5th Cir. 1987). The prosecutor's remarks must be evaluated in the context of the entire trial. Greer v. Miller, 483 U.S. 756, 765–66 (1987) (citing Darden, 477 U.S. at 179); Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir. 1985).

District courts in the Fifth Circuit must apply a two-step analysis when reviewing claims of prosecutorial misconduct. United States v. Wise, 221 F.3d 140, 152 (5th Cir. 2000); United States v. Lankford, 196 F.3d 563, 574 (5th Cir. 1999). First, the court must determine whether the prosecutor made an improper remark. Wise, 221 F.3d at 152. In assessing the meaning and impact of a prosecutor's comments, the Supreme Court cautions that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974).

---

[87] State Rec. Vol. 2 of 9, Judgment on Post-Conviction Relief Claims, p. 4, 11/26/18.
[88] Marcel, 299 So. 3d at 56; State Rec. Vol. 5 of 9.

"If an improper remark was made, the second step is to evaluate whether the remark affected the substantial rights of the defendant." <u>Wise</u>, 221 F.3d at 152.  A habeas corpus petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." <u>Jones</u>, 864 F.2d at 356; <u>accord</u> <u>Hogue v. Scott</u>, 874 F.Supp. 1486, 1533 (N.D. Tex. 1994).   Under this test, a petitioner must demonstrate that the comment rendered his trial "fundamentally unfair," by showing "a reasonable probability that the verdict might have been different had the trial been properly conducted." <u>Rogers</u>, 848 F.2d at 609 (footnote and citations omitted).  "In attempting to establish that a prosecutor's improper comments constitute reversible error, the criminal defendant bears a substantial burden." <u>United States v. Virgen-Moreno</u>, 265 F.3d 276, 290 (5th Cir. 2001) (citing <u>United States v. Diaz-Carreon</u>, 915 F.2d 951, 956 (5th Cir. 1990)).  When determining the effect of the prosecutor's impermissible comments, this court considers three factors: "the magnitude of the prejudicial effect of the remark, the efficacy of any cautionary instruction, and the strength of the evidence of the defendant's guilt." <u>United States v. Bermea</u>, 30 F.3d 1539, 1563 (5th Cir. 1994), <u>cert. denied</u>, 513 U.S. 1156 (1995); <u>United States v. Palmer</u>, 37 F.3d 1080, 1085 (5th Cir. 1994).

Initially, Marcel contends that the prosecutor committed misconduct by asking the jurors during opening statement to "think how you would feel if you lived on this street." [89]  Marcel's claim is patently false.  A review of the transcript of the prosecutor's opening statement shows that no such statement was made.  Further, the transcript of the prosecutor's closing and rebuttal arguments do not demonstrate that he made any similar statement.

---

[89] Rec. Doc. 1-1, p. 29.

Marcel next claims that the prosecutor erroneously told the jury that "Detective Bourg identified Mr. Marcel in the video."[90]  In summarizing Detective Bourg's testimony, the prosecutor specifically stated, "He also saw the surveillance initially, not all of it.  It took him several days later to go through all of it in detail, but he saw it out there and said, yep, it looks just like Arty."[91]

Detective Bourg testified that Marcel had already been detained when he arrived at the scene.[92]  He explained, that as he was speaking with Marcel, deputies advised him that many of the missing items had been recovered in the brush behind Marcel's property.[93]  Bourg testified that he reviewed some of the surveillance video at the scene and later spent three days watching the entirety of the video.[94]  Bourg admitted that he could not identify by facial features the individual depicted on the surveillance video.[95]  He explained that he initially reviewed the surveillance video on site after he collected the wet shoes found in Marcel's yard and compared them to the prints left near Robichaux's shed.[96]

The prosecutor was clearly mistaken in his comment suggesting that Bourg testified that the video surveillance depicted Marcel.  Rather, it was Matherne who testified that Marcel resembled the suspect in the video surveillance.[97]  Nonetheless, the prosecutor's comment, albeit misleading, was not egregious.  Further, there is no evidence that the prosecutor made the comment in bad faith in a deliberate attempt to taint the proceedings or prejudice the jury.  The trial court instructed the jury on numerous occasions that the attorneys' comments were not to be considered

---

[90] Id., at p. 25.
[91] State Rec. Vol. 4 of 9, Trial Transcript, p. 28, 4/22/15.
[92] State Rec. Vol. 4 of 9, Trial Transcript (con't), p. 116, 4/21/15.
[93] Id., at p. 118.
[94] Id., at pp. 133-34.
[95] Id., at p. 146.
[96] Id., at pp. 119-20, 145-46.
[97] Id., at p 98.

evidence and may not be given any weight in reaching a verdict.[98]  The jury was again so charged at the end of trial.[99]  Additionally, when the comment is considered in context of the entire trial, it cannot be reasonably said that it played a significant factor in the jury's verdict, especially considering the jury instructions and the overwhelming evidence of guilt admitted at trial.

Marcel's final claim of prosecutorial misconduct relates to the prosecutor's statement in his rebuttal argument that, "As far as the wife and the father-in-law and the son not testifying, well, you know, he's got – it's very easy to say 'Please subpoena these people to come testify,' and he could have called those witnesses."[100]  This remark was made in response to the defense's argument that the state failed to present the testimony of Robichaux's family who was present in the house at the time of the burglary of the shed.  Defense counsel moved for a mistrial based on the prosecutor's comment.[101]  The trial court found, that if there was error, it was benign and could be cured by jury instructions and denied the motion.[102]

The Fifth Circuit has determined, the prosecutor may respond to closing arguments by the defense, and this response does not shift the burden of proof.  United States v. Stephens, 571 F.3d 401, 408 (5th Cir. 2009) (finding prosecutor's remark that both sides could subpoena witnesses not improper) (citing United States v. Palmer, 37 F.3d 1080) (5th Cir.1994)).  Here, defense counsel argued that the state failed to present testimony of Robichaux's wife, father-in-law, and son who were present at the home at the time the burglary of the shed took place.[103]  The prosecutor made his statement in rebuttal in response to defendant's argument.

---

[98] State Rec. Vol. 3 of 9, Trial Transcript, p. 157, 4/20/15; Trial Transcript, pp. 17, 29-30, 4/21/15; State Rec. Vol. 4 of 9, Trial Transcript, p. 21, 62-63, 4/22/15.
[99] State Rec. Vol. 4 of 9, Trial Transcript, p. 21, 62-63, 4/22/15.
[100] Id., at p. 52.
[101] Id., at p. 53.
[102] Id., at p. 55.
[103] Id., at p. 46.

Even if the prosecutor's comment was improper rebuttal, it was hardly "so pronounced and persistent that it permeates the entire atmosphere of the trial" to mandate reversal.  <u>See, e.g.</u>, <u>United States v. Simon</u>, 964 F.2d 1082, 1086 (11th Cir. 1992).  Rather, after the trial court denied the mistrial outside the presence of the jury, the prosecutor amended his comment to state the following:

> We were talking about the wife, the father-in-law, and the son not testifying.  Mr. Byrne correctly pointed out that I didn't call them.  Well why would I call somebody to say they didn't see anything?  Am I required to call every resident on Bull Run Road to come in and say, "No, I didn't see Arty burglarizing Todd's shed."  Because if I'd have subpoenaed the, they'd have gladly come.  They wouldn't have seen it.[104]

Unlike <u>Simon</u>, where the prosecutor repeatedly referred to the defendant's failure to produce a .45 caliber gun matching the murder weapon for inspection, the prosecutor's initial comment regarding the defense's failure to subpoena Robichaux's family cited above is a single, brief and isolated comment made in rebuttal.

Further, the fact that Marcel was convicted also is not enough to establish that the isolated rebuttal comment was prejudicial or impacted the verdict.  The proper question is not whether "the jury possibly or even probably" viewed the remark as indicative of the petitioner's guilt, but "whether the jury necessarily would have done so."  <u>United States v. Grosz</u>, 76 F.3d 1318, 1326 (5th Cir. 1996).  In this case, the jury heard Robichaux's identification of Marcel, viewed the surveillance video depicting the crime, and heard and viewed the other circumstantial evidence of Marcel's guilt, all of which the jury apparently found credible and convincing.  The prosecutor's rebuttal to the defense's attack of the failure of the state to present testimony from Robichaux's wife, father-in-law, and son had no apparent or unconstitutionally prejudicial impact on the outcome of the case or the verdict.

---

[104] <u>Id.</u>, at p. 56.

Finally, the trial court repeatedly instructed the jury both at the commencement of trial and after closing arguments that petitioner was presumed innocent, he was not required to prove his innocence, and the burden was on state to prove every element beyond a reasonable doubt.[105] Significantly, the trial court also instructed the jury that Marcel was not required to call any witnesses, produce any evidence, or testify and that the jury could not consider that fact against him or permit it to raise any negative inference or presumption against him.[106] There is no reason to believe that jurors in this case disregarded that instruction. Weeks, 528 U.S. at 234.

Accordingly, Marcel fails to establish that the state-court determination rejecting his prosecutorial misconduct claim was either contrary to or an unreasonable application of clearly established Supreme Court law. He is not entitled to relief as to this claim.

## E.    Ineffective Assistance of Counsel (Claim No. 5)

Marcel raises multiple claims of ineffective assistance of counsel in his petition. He asserts his counsel was ineffective in failing to (1) subpoena records; (2) object to remarks which would constitute prosecutorial misconduct; (3) advise him of a plea agreement; (4) retain an expert witness; (5) investigate the case; and (6) call witnesses. He also claims ineffective assistance of appellate counsel.

The state trial court in denying petitioner's ineffective assistance of counsel claims, explained:

> Strategic decisions are beyond the realm of Strickland. Marcel's trial lawyer, Kerry Byrne, testified that he sought out witnesses to testify on Marcel's behalf, but found none. He knew that certain witnesses – including Marcel's family members – had nothing positive to offer; they would have been harmful, not helpful, to Marcel's cause. Accordingly, Mr. Byrne made the strategic decision not to call them. He continued that, based on his almost three decades of criminal defense work, expert footprint testimony was unnecessary, because it would not

---

[105] State Rec. Vol.3 od 9, Trial Transcript, pp. 156-57,  4/20/15; State Rec. Vol. 4 of 9, Trial Transcript, pp. 61-62, 4/22/15.
[106] State Rec. Vol. 4 of 9, Trial Transcript, p. 62, 4/22/15.

exonerate Marcel or aid in his defense, and that a request for funding for same would be futile. Mr. Byrne also explained that there was no strategic advantage to be gained by subpoenaing records of a prior burglary. The record would have neither exonerated Marcel nor advanced his defense. Furthermore, Mr. Byrne denounced the suggestion that he failed to inform Marcel of plea negotiations. The Court has found no error of constitutional proportion in the prosecutor's opening statement or closing argument. Therefore, trial counsel's alleged failure to object does not warrant relief. The court finds that Marcel failed to prove any deficiency in trial counsel's performance or prejudice resulting. Accordingly, relief is not warranted.

The United States Supreme Court stated the following regarding a claim of ineffective assistance of appellate counsel on direct appeal:

> In reviewing claims ineffective assistance of counsel on direct appeal, the Supreme Court of the United States has expressly observed that appellate counsel "need not advance every argument, regardless of merit,["] urged by the defendant. Evitts v. Lucey, 469 U.S. 387, 105 S. Ct. 830 [835,] (1985). The Court gives great deference to professional appellate strategy and applauds counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues.["] Jones v. Barnes, 463 U.S. 745 [746], 103 S.Ct. 3308 [3310] (1983). This is true even where the weaker arguments have merit. Id. at 751-2, 103 S.Ct. 3308. When the claim of ineffective assistance of appellate counsel is based on failure to raise the issue on appeal, the prejudice prong of the Strickland test requires the petitioner to establish that the appellate court would have granted relief, had the issue been raised. United States v. Phillips, 210 F.3d 345, 350 (5 Cir. 2000); see also State ex rel. Sparkman v. State, 15-1726 (La. 10/17/16), 202 So.3d 488, 491.

Marcel advanced numerous motions at the trial level and filed pro se briefs and other papers at the appellate level. As to appellate counsel, Marcel fails to provide information, facts, or evidence in support of this claim. The court finds Marcel's claim speculative and conclusory. Marcel also fails to prove that his appellate counsel acted deficiently, or that any prejudiced resulted.

Upon considering the testimony, arguments, advanced at the evidentiary hearing, the trial record and the law, the Court finds that Marcel's ineffective assistance of counsel claims are unsubstantiated and do not warrant relief.[107]

The Louisiana Supreme Court found Marcel failed to show he received ineffective assistance of counsel under Strickland.[108]

---

[107] State Rec. Vol. 2 of 9, Judgment on Post-Conviction Relief Claims, pp. 6-7, 11/26/18.
[108] Marcel, 299 So.3d at 56; State Rec. Vol. 5 of 9.

### 1.  The <u>Strickland</u> Standard

The clearly established federal law which governs ineffective assistance of counsel claims is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>Strickland</u> established a two-prong test for evaluating such claims.  Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. <u>Id.</u> at 697.  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, it may dispose of the ineffective assistance claim without addressing the other prong.  <u>Strickland</u>, 466 U.S. at 697.

To prevail on the deficiency prong of the <u>Strickland</u> test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1988).  Analysis of counsel's performance must consider the reasonableness of counsel's actions in light of all the circumstances.  <u>See</u> <u>Strickland</u>, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  <u>See</u> <u>Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

Secondly, the appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel.  In order to prove

prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.  In determining whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.  On the other hand, to prove prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000).  Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error. Briseno, 274 F.3d at 210.

Because ineffective assistance of counsel claims present mixed questions of law and fact, this Court must defer to the state court decision unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are

39

different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  <u>Ibid</u>.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then explained:

Surmounting <u>Strickland</u>'s high bar is never an easy task.  An ineffective assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult.  *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

Id. at 105 (citations omitted; emphasis added).  Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt."  Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted).  For the following reasons, the court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to Marcel's ineffective assistance of counsel claims.

### 2.    Failure to Investigate the Case, Subpoena Records, & Call Witnesses

Marcel claims that his trial counsel failed to investigate the case, subpoena records, and call lay and expert witnesses.  Specifically, Marcel claims that his trial counsel failed to subpoena the police report related to the crime.  He further claims that trial counsel failed to obtain pictures of Marcel's Bose radio in his gazebo.  Marcel also claims that his trial counsel released lay witnesses from subpoenas without calling them to testify.  Finally, he claims that his counsel was ineffective in failing to call an expert witness to testify that the shoes confiscated from his property were not the shoes that left the prints at Robichaux's shed.

" 'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.' "  Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted); Druery v. Thaler, 647 F.3d 535, 541 (5th Cir. 2011).  A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown.  Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696, recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").  To prevail on such a claim, petitioner must provide factual support showing what exculpatory evidence further investigation would have revealed.  Moawad, 143 F.3d at 948; Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Davis v. Cain, No.

07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

As an initial matter, Marcel has failed to establish that counsel's investigation was actually inadequate in any respect. In fact, he presented no evidence whatsoever as to what investigative steps counsel actually took or failed to take. Without such evidence, he cannot show that counsel performed deficiently. Netter v. Cain, 2016 WL 7157028, at *11 (E.D. La. Oct. 6, 2016), adopted, 2016 WL 7116070 (E.D. La. Dec. 7, 2016). While Marcel claims that he has pictures of a Bose radio in his gazebo which would have explained the presence of the Bose remote on his person at the time of his arrest,[109] Marcel failed to present any such pictures to the state courts or to this court. Further, Robichaux testified that the remote found on Marcel's person was part of a Bose Wave system that was stolen from Robichaux's property two weeks earlier.[110] Robichaux had no doubt that the remote controller was his.[111] Detective Bourg testified that, when he questioned Marcel about the remote, Marcel said he was trying to get it to work with one of the systems he had at his residence.[112] Bourg further testified that they conducted a search of his residence, and there were no Bose brand electronics found.[113]

Marcel also suggest that his trial counsel did not "subpoena the record" including the police report.[114] Marcel admits, however, that he "cannot say with specificity" that his trial counsel did not do so.[115] Regardless, the record establishes that defense counsel participated in open file

---

[109] Rec. Doc. 1-1, p. 38.
[110] State Rec. Vol. 4 of 9, Trial Transcript (con't), pp. 176-77, 4/21/15.
[111] Id., at p. 177.
[112] Id., at p. 130.
[113] Id.
[114] Rec. Doc. 1-1, p. 33.
[115] Id.

discovery.[116] Further, prior to the commencement of testimony, defense counsel indicated that the police reports had been provided in open file discovery and that he had read them.[117]

As to the contention that counsel was ineffective in failing to call certain lay and expert witnesses, that contention likewise fails. The United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.* This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Marcel provides a list of witnesses who live on Bull Run Road who he claims would have testified on his behalf including Sandy Robichaux, Jimmy Rivero, Lawrence Berthelot, and several witnesses for whom he did not provide last names including Craig, Grace, Nick and Donna. Marcel, however, has not proved that any of these potential witnesses, with the exception of Gracie Kendall, who testified as a state witness at trial and was cross-examined by defense counsel, were available to testify at the time of trial. Most importantly, not only has he not explained the nature

---

[116] State Rec. Vol. 3 of 9, Hearing Transcript, p. 36, 4/14/15.
[117] State Rec. Vol. 3 of 9, Trial Transcript, pp. 12-14, 4/21/15.

of the proposed witnesses' testimony, he has not proved that they in fact would have testified in a manner beneficial to the defense.

The court notes that, outside the presence of the jury, defense counsel presented the testimony of investigator Robert Brown, who testified that he interviewed Sandra Robichaux, Gracie Kendall, Donna Massey and Nick Davis.[118]  According to Brown, Kendall, Massey and Davis all told him that they were not home at the time of the burglary.[119]  Brown stated that Davis had "[e]xtremely, highly unfavorable" things to say about Marcel and, that if the defense were to call any of the witnesses named, "the jury would deliberate three seconds before coming back with a guilty verdict."[120]

Before adjourning for the day, and outside the presence of the jury, defense counsel advised the trial court that Marcel was insisting that he call Jimmy Rivero, Todd Robichaux's father-in-law.[121]  Defense counsel stated that he and Brown had spoken to Rivero and were of the opinion that Rivero had nothing to say that would benefit Marcel and, rather, the questions Marcel wanted defense counsel to ask Rivero would open the door to otherwise inadmissible character evidence which would be "extremely devastating to his case."[122]  Brown, who was still under oath, agreed with defense counsel.[123]  Significantly, Marcel stated on the record that he was also in agreement.[124]

Further, at the post-conviction hearing, Byrne testified that he spoke with all the neighbors on Bull Run Road.[125]  He testified that none of the witnesses would have been favorable to Marcel

---

[118] State Rec. Vol. 4 of 9, Trial Transcript (con't), pp. 182-83, 4/21/15.
[119] Id., at pp. 183, 186.
[120] Id., at p. 188.
[121] Id., at p. 228.
[122] Id., at pp. 229-30.
[123] Id., at p. 229.
[124] Id.
[125] State Rec. Vol. 2 of 9, Evidentiary Hearing Transcript, p. 30, 10/24/18.

and "in fact, quite the opposite."[126]  Byrne recalled that one neighbor he spoke to told him that he believed Marcel was responsible for an arson at the Lawrence property next door to the Robichaux property.[127]

The evidence of record shows that Sandy Robichaux, Jimmy Rivero, Gracie Kendall, Nick Davis and Donna Massey would not have provided testimony beneficial to the defense.  Further, Marcel has not provided any evidence, such as an affidavit, from Lawrence Berthelot or Craig L/N/U, demonstrating that they were available to testify and would have done so in a manner favorable to the defense.  Marcel offers only self-serving, speculative and conclusory allegations that the proposed witnesses would have in fact testified and would have done so in a manner beneficial to him.  Therefore, he obviously failed to meet his burden of proof with respect to this claim.  See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009)

---

[126] Id., at p. 15.
[127] Id.

("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Likewise, Marcel has not shown his counsel was ineffective for failing to secure funds to hire an expert to evaluate the photographs of the shoe prints and the shoes confiscated from Marcel. Byrne testified at the hearing that he spoke with Terrebonne Chief Public Defender Anthony Champagne about retaining an expert witness and Champagne would not authorize funds.[128] Byrne recalled that the purple dye was in the treads of one of the shoes and therefore hiring an expert would have been an waste of money.[129]  Byrne testified that Champagne laughed at him when he discussed funding for an expert.[130]

While Marcel claims an expert witness would have testified that the shoes confiscated from Marcel were not the same shoes that left prints at Robichaux's shed, he has not identified any particular expert who was available to testify in that manner or any other manner favorable to a particular defense.  Marcel simply provides self-serving, speculative, and conclusory allegations that an unidentified expert witness would have in fact testified and would have done so in a manner favorable to the defense.  Further, while Marcel claims that Byrne falsely testified at the hearing that there was dye in the shoes, Matherne in fact testified at trial that he saw a blue, purplish substance in the bottom of the sole of a shoe.[131]  Given the testimony of Byrnes and Matherne that were was dye in one of the shoes confiscated from Marcel, Marcel has not shown that an expert would have been of assistance to the defense.  Therefore, he has failed to meet his burden of proof with respect to this claim.

###   3.    Failure to Object to Prosecutorial Misconduct

---

[128] Id., at p. 7.
[129] Id., at p. 8.
[130] Id.
[131] State Rec. Vol. 4 of 9, Trial Transcript (con't), p. 95, 4/21/15.

Petitioner claims that counsel was ineffective in failing to object to the prosecutor's comments during opening statement and closing arguments.

Initially, as previously explained, the prosecutor did not make any statement in opening statement, closing argument or rebuttal asking the jurors to put themselves in the victim's place. As there was no such statement made, defense counsel was not ineffective in failing to object.

The trial transcript demonstrates that defense counsel objected to the prosecution's statement that the defense could have called witnesses. Defense counsel also moved for a mistrial based on the statement. The request for a mistrial was denied. The fact that his defense was not successful does not mean his counsel's action was deficient. See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted).

It is true that defense counsel did not object to the prosecutor's statement that Bourg identified Marcel from the surveillance video. However, "a decision of counsel to forgo a particular objection is generally one of trial strategy, and, as such, is normally insufficient to support an ineffective assistance claim." Rick v. Cain, Civ. Action No. 12-2617, 2013 WL 6388641, at *7 (E.D. La. Dec. 4, 2013); accord Rios-Delgado v. United States, 117 F. Supp. 2d 581, 589 (W.D. Tex. 2000) ("Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance. In cases where an accused complains that counsel was ineffective because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy."). Decisions regarding whether to object to comments made in closing arguments clearly fall within that general rule. See, e.g., Drew v. Collins, 964 F.2d 411, 423 (5th Cir. 1992) ("A decision not to object to a closing argument is a matter of trial strategy."). Moreover, even where an objection might have some

small chance of succeeding, an attorney is allowed to make a strategic choice to forego such an objection to avoid antagonizing the jury. See Wiley v. Puckett, 969 F.2d 86, 102 (5th Cir. 1992). Such deference to counsel's strategic choices is particularly appropriate here because, if counsel had objected, he would have invited the jurors to focus their attention on the prosecutors' comment, which jurors may not consider as evidence in any event, and perhaps thereby inflated the importance in the jurors' minds. Counsel can hardly have been deemed to have performed ineffectively in choosing to avoid that unnecessary risk.

Further, "counsel's failure to object to improper remarks by a prosecutor is not ineffective assistance unless the remarks are so prejudicial as to render the trial fundamentally unfair." Jones v. Estelle, 632 F.2d 490, 492–93 (5th Cir. 1980). Therefore, it is not enough to show a misstatement of the evidence to be entitled to habeas relief. Instead, the petitioner must still demonstrate a reasonable probability that but for counsel's failure to object to the prosecutor's remarks, the verdict would have been different. The court has previously determined that Marcel has not shown that the statement had substantial or injurious impact on the verdict. Therefore, defense counsel's failure to object to the statement that Bourg identified Marcel from the surveillance video did not prejudice petitioner.

For all of these reasons, it is clear that Marcel has not demonstrated that the state courts' decision rejecting this ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. He is not entitled to relief as to this claim.

### 4.    Failure to Advise of Plea Offer

Marcel also claims that his trial counsel failed to advise him of a plea offer by the state of 12 years with no habitual offender adjudication or sentence. Marcel claims he did not learn of the plea offer until he received a copy of Byrne's file which included an unsigned plea agreement.

The Supreme Court has held that the Sixth Amendment right to effective assistance of counsel extends to the negotiation and consideration of plea offers that lapse or are rejected as effective counsel is "a right that extends to the plea-bargaining process." Missouri v. Frye, 566 U.S. 134, 144-45 (2012); Lafler v. Cooper, 566 U.S. 156, 162 (2012). In Frye, the Supreme Court held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," and that, in general, where such an offer is not communicated to the defendant, counsel "[does] not render the effective assistance the Constitution requires." Frye, 566 U.S. at 145.

In addition to proving that counsel's performance was objectively deficient, a petitioner must also meet his burden under Strickland's second prong and prove that counsel's errors actually prejudiced his case. To prove actual prejudice in connection with plea proceedings, a petitioner must demonstrate "that the outcome of the plea process would have been different with competent advice." Lafler, 566 U.S. at 163. Thus, the petitioner must show that (1) "there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)," (2) "that the court would have accepted its terms," and (3) "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Id. at 164.

Marcel testified at the post-conviction evidentiary hearing that Byrne did not advise him on the plea offer.[132] He claimed that Byrne advised him that it was best for him to go to trial "because the surveillance video would set [him] free."[133] In rebuttal, and as noted by the trial

---

[132] State Rec. Vol. 2 of 9, Evidentiary Hearing Transcript, p. 23, 10/24/19.
[133] Id.

court in its order denying relief as to this claim, Byrne denied this allegation.[134]  Byrne testified

that he in fact communicated the plea offer to Marcel and recalled word for word that Marcel told

him, "If I did it, that would be a good deal, but I didn't do it."[135]  Byrne testified that he advised

Marcel that it was in his best interest to accept the plea offer of 12 years because he believed that

Marcel was "dead in the water" as the evidence was overwhelming.[136]  Byrne testified that Marcel

knew that he would be facing a sentence of life imprisonment on a multiple bill if he did not accept

the plea offer and was convicted at trial, but that Marcel refused to accept the offer.[137]  Byrne felt

that the evidence of Marcel's guilt was as strong as he had ever seen in a case, absent DNA

evidence.[138]

Notably, at a May 20, 2015 hearing, Marcel complained about the multiple bill.[139]  Byrne

specifically stated that Marcel did not accept the plea offer to which Marcel responded, "I know

that."[140] The prosecutor put on the record that a plea offer of 12 years was made at a pretrial

hearing held on November 17, 2014.[141]

Marcel's own filing fails to support his claim that counsel failed to communicate a plea

offer to him.   In a handwritten letter to the trial court prior to his trial, Marcel specifically

acknowledged that the prosecutor offered him a plea deal of 12 years but stated that he would "not

take the deal on false charges," and claimed that he was innocent.[142]

---

[134] Id., at pp. 28-30; State Rec. Vol. 2 of 9, Judgment on Post-Conviction Relief Claims, p. 6, 11/26/18 ("Furthermore, Mr. Byrne denounced the suggestion that he failed to inform Marcel of plea negotiations.").
[135] Id., at p. 28.
[136] Id., at pp. 29-30.
[137] Id., at pp. 28-30.
[138] Id., at p. 31.
[139] State Rec. Vol. 4 of 9, Hearing Transcript, p. 16, 5/20/15.
[140] Id.
[141] Id., at pp. 18-19.
[142] State Rec. Vol. 1 of 9, Pro Se Letter, 2/20/15 (postmarked 2/4/15)

It is apparent that Marcel was advised of the plea offer and rejected it. The mere fact that a plea offer was made and that Marcel rejected it does not suffice to show that counsel performed deficiently. Byrne's testimony, along with Marcel's statement and his handwritten pleading before trial, show that Byrne advised Marcel to accept the plea offer and that he would face charges as a multiple offender if he went to trial, but Marcel rejected the offer. Even if the court were to assume that counsel advised against accepting the plea offer, although there is no credible evidence supporting that claim, Marcel has not shown that "there is a reasonable probability ... that [he] would have accepted the plea ... but for the ineffective advice of counsel." Lafler, 566 U.S. at 164.

For these reasons, the court finds that the denial of relief by the state courts was not contrary to or an unreasonable application of Frye, Lafler, or Strickland, especially considering the doubly-deferential standards of the AEDPA when applying Strickland. Marcel is not entitled to relief on this claim.

### 5.    Ineffective Assistance of Appellate Counsel

Marcel also claims ineffective assistance of appellate counsel.[143] He claims that his appellate counsel failed to raise meritorious issues on appeal.

In denying this claim, the state trial court explained that "Marcel generally faults his appellate counsel, Bertha Hillman. His allegations lack specificity in that he does not state which actions or inactions were of Ms. Hillman were purportedly ineffective."[144] The trial court concluded that Marcel's claim was speculative and conclusory.[145] The Louisiana Supreme Court found that Marcel failed to show that he received ineffective assistance under Strickland standard.[146]

---

[143] Rec. Doc. 1-1, p.p. 54-55.
[144] State Rec. Vol. 2 of 9, Judgment on Post-Conviction Relief Claims, p. 5, 11/26/18.
[145] Id., at p. 7.
[146] Marcel, 299 So. 3d at 56; State Rec. Vol. 5 of 9.

Criminal defendants are entitled to effective assistance of counsel in their first appeal of right. Evitts v. Lucey, 469 U.S. 387, 394 (1985). When considering such a claim of ineffective assistance of appellate counsel, a court must remember that appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)." West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996). Rather, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." Id. at 753. As a result, the applicable test to be applied in assessing such a claim is whether the issue ignored by appellate counsel was "clearly stronger" than the issues actually presented on appeal. See, e.g., Diaz v. Quarterman, 228 F. App'x 417, 427 (5th Cir. 2007); accord Robbins, 528 U.S. at 288.

On the first direct appeal in this case, appellate counsel asserted two claims: (1) that the trial court erred in allowing "other crimes" evidence; and (2) Marcel's sentence was constitutionally excessive.[147] Those claims were ultimately found to be without merit.

Here, Marcel does not even identify in his federal application what other claim or claims he believes that his appellate counsel should have raised, much less show that they were "clearly stronger" than the claims raised by appellate counsel. Accordingly, his claim necessarily fails. See, e.g., Galjour v. Cain, Civ. Action No. 13-5878, 2015 WL 349317, at *13 (E.D. La. Jan. 26,

---

[147] State Rec. Vol. 1 of 9, Appeal Brief, 2015-KA-1805, 8/28/17.

2015); Cox v. Cain, Civ. Action No. 10-1596, 2010 WL 6032638, at *13 (E.D. La. Nov. 23, 2010), adopted, 2011 WL 870597 (E.D. La. Mar. 9, 2011).

Marcel has not demonstrated any deficient performance on the part of his appellate counsel or shown any prejudice caused by counsel's failure to assert other claims in his appeal. He is not entitled to relief as to this claim.

## F.   Right to Testify (Claim No. 3)

Marcel claims that he was denied the right to testify by counsel. He claims that he informed his counsel that he wanted to testify and that his counsel refused to allow him to take the stand and testify. He further claims that he was not notified of his right to testify.

On post-conviction review, after an evidentiary hearing, the state trial court found as follows:

> Claims of attorney interference with the federal right to testify are governed by the standard announced in Strickland v. Washington, 466 U.S. 668, 687 (1984). United States v. Mullins, 315 F.3d 449, 452-53 (5th Cir. 2002). To prevail under Strickland, a petitioner must establish that his counsel's performance was deficient, and the deficient performance prejudiced his defense. Id. at 453. It is deficient performance as a matter of law for defense counsel "to override the ultimate decision of a defendant to testify contrary to his advice." Id. Conversely, "when the record is simply that the defendant knew of his right to testify and wanted to do so but counsel was opposed, [and the] defendant acquiesced in his lawyer's advice, … the only inquiry is whether the advice was sound trial strategy." Id. at 453-54.

> Marcel is well-acquainted with the criminal justice system. His criminal history is extensive. The trial record and the testimony of trial counsel, Mr. Byrne, at this hearing confirm that Marcel was present in the courtroom when the state rested its case at trial, that the Court asked defense counsel if he was calling any witnesses or presenting any evidence, to which Mr. Byrne responded "No." Marcel did not inform the court that he wanted to take the stand to testify. He remained seated and silent. He did not object or otherwise protest. It is this court's experience that Marcel is one to freely voice his feelings and opinions. Here, however, he remained mute.

> Mr. Byrne also testified that he represented Marcel on more than one prior occasion, that Marcel understood that he had the right to testify in his own defense

at trial, that he understood the pitfalls of doing so, and that he never once indicated to counsel that he wanted  [to] take the stand and testify in this case.

The court finds nothing in the record supports this claim.  Marcel failed to make the showing to warrant relief under either <u>Hampton</u> or <u>Strickland</u>.  Relief will not be granted on this claim.[148]

The Louisiana Supreme Court found that Marcel failed to meet the <u>Strickland</u> standard.[149]

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments.  <u>Rock v. Arkansas</u>, 483 U.S. 44, 49 (1987); <u>Bower v. Quarterman</u>, 497 F.3d 459, 473 (5th Cir. 2007); <u>Sayre v. Anderson</u>, 238 F.3d 631, 634 (5th Cir. 2001); <u>Jordan v. Hargett</u>, 34 F.3d 310, 312 (5th Cir. 1994). When a habeas petitioner alleges that his counsel, not the court or the prosecution, prevented him from testifying, the Fifth Circuit has held that the " 'appropriate vehicle for such claims is a claim of ineffective assistance of counsel.'" <u>Sayre</u>, 238 F.3d at 634 (quoting <u>United States v. Brown</u>, 217 F.3d 247, 258-59 (5th Cir. 2000)).

A criminal defendant may waive his right to testify if that waiver is knowing, intelligent and voluntary.  <u>Bower</u>, 497 F.3d at 473 (citing <u>Emery v. Johnson</u>, 139 F.3d 191, 198 (5th Cir. 1997)).  A violation of this right occurs only if the " 'final decision that [the defendant] would not testify was made against his will.' " <u>Emery</u>, 139 F.3d at 198 (quoting <u>United States v. Teague</u>, 908 F.2d 752, 759 (11th Cir. 1990)).

A habeas petitioner has the burden of proving that he was denied this constitutional right. "[A] petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand." <u>Turcios v. Dretke</u>, No. 97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing <u>Underwood v. Clark</u>, 939 F.2d 473, 475-76 (7th Cir. 1991));

---

[148] State Rec. Vol. 2 of 9, Trial Court Judgment on Post-Conviction Relief Claims, p. 2, 11/26/18.
[149] <u>Marcel</u>, 299 So. 3d at 56; State Rec. Vol. 5 of 9.

accord <u>Jones v. Cain</u>, No. 10-213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.);

<u>Davis v. Quarterman</u>, No. 06-3606, 2007 WL 1886272, at *6 (S.D. Tex. Jun. 29, 2007).

In <u>Underwood</u>, the United States Eleventh Circuit Court of Appeals identified numerous

problems that would result if habeas petitioners were not required to satisfy the burden of proof.

<u>Underwood</u>, 939 F.2d at 475-76.  Adopting the reasoning in <u>Siciliano v. Vose</u>, 834 F.2d 29, 31

(1st Cir. 1987), the <u>Underwood</u> court recognized that an assertion that counsel forbade the

defendant from testifying, even if made under oath,

> is insufficient to require a hearing or other action on his claim that his right to testify
> in his own defense was denied him.  It just is too facile a tactic to be allowed to
> succeed.  Some greater particularity is necessary - and also we think some
> substantiation is necessary, such as an affidavit from the lawyer who allegedly
> forbade his client to testify - to give the claim sufficient credibility to warrant a
> further investment of judicial resources in determining the truth of the claim.

<u>Underwood</u>, 939 F.2d at 475-76; <u>accord</u> <u>Gross v. Knight</u>, 560 F.3d 668, 672 (7th Cir.), <u>cert. denied</u>,

558 U.S. 950 (2009).

Addressing similar claims, the United States Fifth Circuit has also cited to the <u>Underwood</u>

holding and "observed that allowing a bare assertion of a right-to-testify violation to precipitate

the further investment of judicial resources is problematic."  <u>United States v. Martinez</u>, 181 F.3d

627, 628 (5th Cir. 1999) (quoting <u>Underwood</u>, 939 F.2d at 476) (a conclusory assertion by a

defendant that his right to testify was denied him is insufficient to require a hearing because "[i]t

just is too facile a tactic to be allowed to succeed").  The Fifth Circuit agreed that there is "a grave

practical difficulty in establishing a mechanism that will protect a criminal defendant's personal

right ... to testify in his own behalf without rendering the criminal process unworkable."  <u>Id.</u> at 628

(citing <u>Underwood</u>, 939 F.2d at 475).

Marcel has presented no evidence other than his own testimony at the evidentiary hearing,

which the state trial court rejected, in support for his contention that he was forced by counsel to

waive his right to testify.  He testified that he told Byrne, his trial counsel, numerous times that he wanted to testify.[150]  He admitted that Byrne advised him not to testify and informed him that if he did not take the stand, the state would not be able to use his "past against [him]."[151]  He, however, claimed that, after the state presented testimony from witnesses relating to his prior criminal history, he told Byrne he wanted to testify.[152]  Marcel claimed that he did not inform the trial court that he wanted to testify because he was afraid that the judge would remove him from the courtroom.[153]

Byrne, testified that he did not know if he specifically told Marcel, "You realize you have a right to take the stand."[154]  He, however, explained that he discussed petitioner testifying and testified that Marcel never intended to testify at trial.[155]  Byrne stated that Marcel never told him that he wanted to testify.[156]  He recalled that Marcel "never intended to testify at trial because he was an extensive, extensive criminal history that he was aware of and he knew that he'd be subject to cross-examination.  And yeah, he never indicated that he intended to testify, never."[157]  Byrne testified that, when he rested the case, Marcel did not tell him that he wanted to testify.[158]  He reiterated, "I can tell you certainly, he certainly did not want to testify."[159]  Byrne testified that Marcel had at least eight prior convictions and that he had previously represented him on another

---

[150] State Rec. Vol. 2 of 9, Evidentiary Hearing Transcript, p. 19, 10/24/18.
[151] Id., at pp. 19, 22.
[152] Id., at p. 19.
[153] Id., at p. 25.
[154] Id., at p. 6.
[155] Id.
[156] Id., at p. 7.
[157] Id.
[158] Id., at p. 16.
[159] Id.

felony case.[160]  Byrne agreed that Marcel was very experienced with the criminal justice system and was well aware of his rights.[161]

As discussed in <u>Underwood</u> and its progeny, the record contains nothing to give credence to Marcel's claim that his counsel prevented him from testifying.  Despite many outbursts during trial, Marcel made no comment when Byrne rested the case without calling him to testify.  While Marcel admitted that he was provided with paper so that he could communicate with counsel without continuing to verbally interrupt the trial,[162] there is no evidence that he wrote anything to inform counsel that he wanted to testify.  While Marcel claimed he had a limited education and could not write to explain that he wanted to testify, Marcel admitted that he filed many pleadings in his own handwriting.[163]  Further, at trial, Marcel admitted that he could write, and, in fact, stated that he had been writing his attorney notes.[164]  The trial court told Marcel to advise it if he needed time to communicate with Byrne privately and that it would give him the opportunity to do so.[165]  At one point, the trial court requested the jailer return Marcel to the courtroom fifteen minutes early to provide him with time to confer with counsel.[166]

The record reflects that, after the trial court asked Marcel to stop interrupting defense counsel and the court proceedings, Marcel continued to make comments during the testimony of witnesses on three separate occasions.[167]  Thereafter, when the jury was outside the courtroom just prior to an afternoon recess, the trial court provided the parties with an opportunity to put anything on the record.[168]  Byrne stated that he would not been presenting any witnesses in the defense

---

[160] <u>Id.</u>
[161] <u>Id.</u>, at p. 17.
[162] <u>Id.</u>, at p. 26.
[163] <u>Id.</u>
[164] State Rec. Vol. 4 of 9, Trial Transcript (con't), pp. 109, 215, 4/21/15.
[165] <u>Id.</u>, at p. 110.
[166] <u>Id.</u>, at pp. 112-13.
[167] <u>Id.</u>, at pp. 109—110, 124, 143, 162.
[168] <u>Id.</u>, at p. 178.

case.[169]  Marcel did not make any remark.  When recess was over, and, prior to bringing the jury back into the courtroom, the trial court again asked the parties if there was anything they wanted to put on the record.[170]  Marcel again did not make any remarks.

During the testimony of Gracie Kendall, Marcel blurted out a comment about her testimony.[171]  Outside the presence of the jury, the trial court stated that Marcel was "wrecking havoc" on the defense team and that it had observed Marcel's conduct.[172]  The trial court warned Marcel that it expected that there would be no further animation or conduct that would cause attention to Marcel or that he would be removed from the courtroom.[173]  The trial court noted that Marcel's attorney could "barely function with [Marcel] in his ear all the time.[174]  Byrne noted that Marcel had been commenting on the evidence within earshot of the jury and was not helping his case.[175]  The trial court once again reminded Marcel that it expected him to communicate with his counsel, but that it had to be done in an orderly fashion, and that it would give him an opportunity to meet and speak with counsel.[176]

At the end of the day, after the jury exited the courtroom, Byrne explained why he had released Rivero from a subpoena.[177]  He then again advised that he had no intention of calling witnesses the following morning.[178]  Marcel did not make any remark nor did he ask to speak. The following morning, outside the presence of the jury, the trial court confirmed that Byrne did not plan to call any witnesses.[179]  Marcel did not make any comment.  He did not object to Byrne's

---

[169] Id., at p. 179.
[170] Id., at p. 180.
[171] Id., at p. 213.
[172] Id., at p. 214.
[173] Id., at p. 215.
[174] Id., at p. 216.
[175] Id.
[176] Id., at p. 217.
[177] Id., at p. 229.
[178] Id.
[179] State Rec. Vol. 4 of 9, Trial Transcript, p. 15, 4/22/15.

statement that he planned to rest the defense without calling witnesses.  Nor did Marcel advise the trial court that he wished to testify.

Marcel has provided no substantiation for his blanket assertion that he told his counsel that he wanted to testify and that his counsel disregarded his decision.  He also has offered no proof that the discussions he had with counsel regarding testifying were coercive in any way.  His testimony that he was told that he could not be cross-examined on his past if he did not testify is consistent with his testimony at the July 15, 2015 hearing where at Marcel stated, "you told me if I didn't take the stand in court at trial that you cannot cross-examine me on my past background."[180]

Further, while Marcel had never proceeded to trial in the past, he had been made aware in writing of his right to testify on a number of occasions.  Specifically, Marcel acknowledged his right to testify at trial when he signed a number of plea agreements which advised him of that right.[181]  There is no simply credible evidence in this record sufficient to prove any violation of his right to testify.

In addition, Marcel also has not established that his counsel's advice was unreasonable or prejudicial.  A decision whether or not to put a criminal defendant on the stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight."  United States v. Garcia, 762 F.2d 1222, 1226 (5th Cir. 1985); accord United States v. Mullins, 315 F.3d at 453; Amos v. Cain, Civ. Action No. 04-2029, 2008 WL 782472, at *11 (E.D. La. Mar. 20, 2008); Curtis v. Cain, Civ. Action No. 06-1676, 2008 WL 482849 at *10 (E.D. La. Feb. 13, 2008).  Such a matter is

---

[180] State Rec. Vol. 4 of 9, Habitual Offender Hearing Transcript, p. 24, 7/15/15.
[181] State Rec. Vol. 1 of 9, Petition to Enter Plea of Guilty and Order, 9/6/96 ("If I plead NOT GUILTY the Constitution guarantees me … (e) the right to take the witness stand at my sole option ….:"); Waiver of Constitutional Rights and Plea of Guilty, 3/14/05 (acknowledging waiver of constitutional rights including the right to testify); Waiver of Constitutional Rights and Plea of Guilty, 8/14/06 (same).

inherently one of trial strategy, and federal habeas courts generally are not to second-guess counsel's decisions on matters of trial tactics; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.  Counsel acts within the ambit of sound trial strategy to keep evidence of the defendant's credibility, or lack thereof, from the jury.

In Marcel's case, if he were to testify, he would have been exposed to cross-examination regarding the incriminating evidence presented by the state and challenges to his character, including evidence including some of the La. Code Crim. P. art. 404(B) evidence the state trial court excluded as prejudicial, and would very likely would have undermined his own credibility. In addition, Marcel does not indicate, nor has he ever indicated, any specific proposed testimony he might have provided to benefit his defense.

Instead of having Marcel testify, defense counsel wisely sought to establish inconsistencies and flaws in the state's case based on his cross-examination of the state witnesses and the other evidence at trial.  Defense counsel strategically considered the potential harm that plainly could outweigh any benefit Marcel's testimony might have provided the defense, and petitioner acquiesced, although, Marcel now regrets his decision.  Marcel has not established that counsel's advice against testifying was unreasonable.  Nor has he demonstrated that the outcome of the trial would have been any different but for counsel's decision to present a vigorous defense of failure to prove Marcel's identity as the perpetrator beyond a reasonable doubt without his testimony.

As the state courts reasonably concluded, Marcel's allegations that defense counsel denied him the right to testify are unsupported.  Marcel has not demonstrated a deficiency or prejudice resulting from counsel's failure to call him to testify.  The state courts' denial of relief on this issue

was not contrary to or an unreasonable application of <u>Strickland</u>.  Marcel is not entitled to relief

on this claim.

**G.**     <u>**Excessive Sentence (Claim No. 2)**</u>

      Marcel's last claim is that his mandatory sentence of life imprisonment that he received as

a ninth felony offender is excessive and violates the Eighth Amendment against cruel and unusual

punishment and the Louisiana Constitution.

      In sentencing Marcel to the mandatory penalty of life imprisonment for a fourth felony

offender, the trial court noted his prior convictions, including 1998 and 2008 convictions of simple

burglary of an inhabited dwelling, 2013 and 2014 convictions for theft between $500 and $1500,

2006 conviction for aggravated battery, 2014 conviction of third-offense driving while intoxicated,

2005 conviction of theft over $500, and 1996 conviction of possession of stolen things between

$100 and $500.[182]  The trial court explained:

> The Court notes that Mr. Marcel's criminal activity in this parish alone defines him as a career criminal.  He is 51 years old.  Pawnable items are the usual targets of his crimes.  He is a non-violent, albeit remorseless, thief/burglar who has pilfered structures in south Louisiana for much of his adult life.  Even after the state presented evidence of his eight prior felony convictions, he argued, "I fell like I should not be multi-billed."  What Mr. Marcel fails to understand, however, is that burglary robs others of not just material items, but of a sense of security.[183]

The court reasoned:

> Nevertheless, the punishment meted out for Mr. Marcel's eight previous felony convictions accomplished nothing,  His prior sentences did not protect society from this defendant's ongoing wrongdoing.  Although he had multiple opportunities to choose another path in life, Mr. Marcel's criminal misdeeds persist.  He is far from rehabilitated and is a recidivist.  He will likely, if not probably, reoffend if quickly released.  Under these circumstances, society will be best protected by permanently removing Mr. Marcel from its midst.[184]

---

[182] State Rec. Vol. 1 of 9, Reasons for Sentence Pursuant to La. R.S. §15:529.1, p. 1., 8/11/15.
[183] <u>Id.</u>, at p. 2.
[184] <u>Id.</u>, at p. 3.

Marcel raised his sentencing claim on direct appeal. The Louisiana First Circuit, in rejecting the claim, found as follows:

In his second assignment of error, the defendant argues that the sentence imposed by the district court was excessive. Specifically, he argues that he has never committed a violent crime, and his sentence is "a waste of scant economic and human resources."

Louisiana Constitution article I, § 20 prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. A district court judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Hurst, 99–2868 (La. App. 1st Cir.10/3/00), 797 So.2d 75, 83, writ denied, 2000–3053 (La. 10/5/01), 798 So.2d 962.

In State v. Dorthey, 623 So.2d 1276, 1280–81 (La. 1993), the Louisiana Supreme Court recognized that if a district court judge determines that the punishment mandated by the Habitual Offender Law makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," he is duty bound to reduce the sentence to one that would not be constitutionally excessive.

But the holding in Dorthey was made only after, and in light of, express recognition by the Court that, "the determination and definition of acts which are punishable as crimes is purely a legislative function. It is the Legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies. Moreover, courts are charged with applying these punishments unless they are found to be unconstitutional." Dorthey, 623 So.2d at 1278. (Citations omitted.)

In State v. Johnson, 97–1906 (La. 3/4/98), 709 So.2d 672, the Louisiana Supreme Court reexamined the issue of when Dorthey permits a downward departure from the mandatory minimum sentences in the Habitual Offender Law. The court explained the considerations involved when finding a mandatory minimum sentence constitutionally excessive as follows:

A trial judge may not rely solely upon the non-violent nature of the instant crime or of past crimes as evidence which justifies rebutting the

presumption of constitutionality.  While the classification of a defendant's instant or prior offenses as non-violent should not be discounted, this factor has already been taken into account under the Habitual Offender Law for third and fourth offenders. [La.] R.S. 15:529.1 provides that persons adjudicated as third or fourth offenders may receive a longer sentence if their instant or prior offense is defined as a "crime of violence" under [La.] R.S. 14:2(13).  Thus the Legislature, with its power to define crimes and punishments, has already made a distinction in sentences between those who commit crimes of violence and those who do not.  Under the Habitual Offender Law those third and fourth offenders who have a history of violent crime get longer sentences, while those who do not are allowed lesser sentences. So while a defendant's record of non-violent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive.

Johnson, 709 So.2d at 676.

The court further held that to rebut the presumption that the mandatory minimum sentence was constitutional, the defendant had to "clearly and convincingly" show that:

[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. (Citation omitted.)

Johnson, 709 So.2d at 676.

Pursuant to LSA–R.S. 14:62(B), whoever commits the crime of simple burglary shall be fined not more than two thousand dollars, imprisoned with or without hard labor for not more than twelve years, or both.  Louisiana Revised Statutes 15:529.1 provides, in pertinent part:

A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:

* * *

(4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:

(a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life; or

(b) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under [La.] R.S. 14:2(B), a sex offense as defined in [La.] R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

Herein, the instant offense and predicate numbers 2, 5, and 6 were punishable by imprisonment for twelve years. In addition, predicate number 4 was a crime of violence. Thus, the mandatory sentence required by Section 15:529.1(A)(4)(b) was imprisonment for the remainder of the defendant's natural life, without the benefit of parole, probation, or suspension of sentence.

At the sentencing hearing, the district court noted that the fifty-one-year-old defendant "has been continuing to break the laws of this state continuously, continually" and that it was "convinced if let out sooner [the defendant] would break the law again." The court opined that the defendant was a "career criminal" and "exactly what the Louisiana legislature envisioned when it passed this law, that when someone commits crimes so many times, enough is enough. And in this particular case, enough is enough." The court also pointed out that the defendant "created a horrible situation in the neighborhood that [he] lived in." In its written reasons for judgement, the district court described the defendant as a "non-violent, albeit remorseless, thief/burglar who has pilfered structures in south Louisiana for much of his adult life." The court acknowledged that although the defendant's criminal record was "extensive, none of the offenses involved death, serious bodily injury, rape or other sexually-charged offenses, or involved minors or other special victims. Nevertheless, the punishment meted out for [the defendant's] eight previous felony convictions accomplished nothing." The court further noted that the defendant "had multiple opportunities to choose another path in life" and was "far from rehabilitated[.]" The court further stated that the defendant would "likely, if not probably, reoffend if quickly released. Under these circumstances, society will be best protected by permanently removing [the defendant] from its midst."

The defendant failed to clearly and convincingly show that because of unusual circumstances, he was a victim of the legislature's failure to assign sentences meaningfully tailored to his culpability, the gravity of the offense, and the circumstances of the case. Accordingly, there was no reason for the district

court to deviate from the mandatory provisions of Section 15:529.1(A)(4)(a) in sentencing the defendant.

>This assignment of error also lacks merit.[185]

The Louisiana Supreme Court denied writs without reasons.[186]

To the extent Marcel is arguing that his sentence is excessive under Louisiana law, that claim is not cognizable—and cannot properly be heard—in this federal proceeding.  Federal habeas corpus relief is available only for violations of federal constitutional law and, therefore, this court is without authority to review alleged errors of state law.  Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998).  Even if Marcel's sentence was excessive under the Louisiana Constitution, which is an issue this court need not and does not reach, such an error would not be correctable in a federal habeas corpus proceeding.  See, e.g., Butler v. Cain, 327 F. App'x 455, 457 (5th Cir. 2009) (claim that sentence violated state law is not cognizable in federal habeas proceeding.); Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987) ( "... a state's failure to follow its own sentencing procedures is not reviewable by federal habeas corpus.... [T]his Court will not review the state court's findings regarding the constitutionality of petitioner's sentence under state law.").  Marcel is not entitled to federal relief on that point.

As a federal issue considered under the AEDPA standard, an excessive sentence claim presents a question of law.  Chatman v. Miller, No. 05-1481, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005); Davis v. Cain, 44 F. Supp. 2d 792, 798 (E.D. La. 1999); Jones v. Kaylo, No. 99-0567, 1999 WL 544680, at *1 (E.D. La. July 26, 1999).  Nonetheless, Marcel's claim that his sentence is excessive under the Eighth Amendment of the United States Constitution is without merit.

---

[185] Marcel, 2016 WL 3126440, at *8-11; State Rec. Vol. 1 of 9.
[186] Marcel, 221 So. 3d at 855; State Rec. Vol. 1 of 9.

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits.  Haynes, 825 F.2d at 923-24; see Turner v. Cain, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. 1999) (Table, Text in Westlaw) (because sentence was within Louisiana statutory limits and within trial court's discretion, petitioner failed to state cognizable habeas claim for excessive sentence); Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000) (citing Haynes, 825 F.2d at 923-24).  If a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense. Harmelin v. Michigan, 501 U.S. 957 (1991); Solem v. Helm, 463 U.S. 277 (1983).  "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,' " a court will consider (a) the sentences imposed on other criminals in the same jurisdiction and (b) the sentences imposed for commission of the same offense in other jurisdictions.  Smallwood v. Johnson, 73 F.3d 1343, 1347 (5th Cir. 1996) (quoting Harmelin, 501 U.S. at 1005) (citing McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992)); United States v. Gray, 455 F. App'x 448, 449 (5th Cir. 2011); United States v. Thomas, 627 F.3d 146, 160 (5th Cir. 2010), cert. denied, 563 U.S. 998 (2011).

If the sentence is not "grossly disproportionate" in the first instance, however, the inquiry is finished.  United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997), overruled in part on other grounds, United States v. O'Brien, 560 U.S. 218, 234-35 (2010) (as recognized in United States v. Johnson, 398 F. App'x 964, 968 (5th Cir. 2010)).  As the Supreme Court has noted, successful proportionality challenges outside the context of capital punishment are "exceedingly rare" and constitutional violations are sustained only in "extreme" or "extraordinary" cases.  Ewing v. California, 538 U.S. 11, 22 (2003) (quotation and citations omitted); Lockyer v. Andrade, 538 U.S. 63, 73, 77 (2003) (quotation and citations omitted).

In this case, Marcel was convicted simple burglary which is punishable by up to twelve years imprisonment.  La. Rev. Stat. § 14:62(B).  Upon adjudication as a ninth felony offender Marcel, under the applicable version of the habitual offender statute in effect at the time of the commission of his offense, was sentenced to a mandatory life sentence without benefit of parole, probation, or suspension of sentence, which falls within the limits set by the Louisiana legislature at the time.[187]  Generally, a sentence within the limits imposed by statute is neither excessive not cruel and unusual under the Eighth Amendment.  This is so because substantial deference is accorded to the legislature as it, and not the courts, possess the broad authority to determine the types and limits of punishments for crimes.  _Hamdalla v. Vannoy,_ 18-3348, 2018 WL 11295985 at *20 (E.D. La. October 12, 2018).

Considering the wide discretion that is accorded a state trial court's sentencing decision, relief is not warranted because Marcel has not shown that the sentence imposed exceeds or is outside the statutory limits, or is wholly unauthorized by law.  Furthermore, the sentence is not out of line with sentences previously imposed upon similarly situated defendants.  State v. Bowie, 2017 KA 1792, 2018 WL 2453480, at *7-9 (La. App. 1st Cir. Jun. 1, 2018) (defendant guilty of simple burglary who was adjudicated as a fourth felony offender sentenced to life imprisonment); State v. Jones, 165 So. 3d 217 (La. App. 4th Cir. 2015) (life sentence for fourth felony offender convicted of simple burglary); State v. Bailey, 152 So. 3d 1056 (La. App. 2d Cir. 2014) (life sentence was fourth felony offender convicted of simple burglary).

---

[187] Effective November 1, 2017, and in accordance with 2017 La. Acts Nos. 257, § 1 & 282, § 1, the mandatory minimum penalty for a fourth felony offender pursuant to La. Rev. Stat. § 15:529.1(A)(4)(a) is a "term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life."

Accordingly, Marcel is not entitled to relief as to his sentence as he has not established that the state courts' denial of relief was contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Arty Marcel be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[188]

New Orleans, Louisiana, this 31st day of January, 2022.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**

---

[188] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.